LONG, Presiding Judge.
The appellant, Dennis Demetrius McGriff, was convicted of murdering Michael McCree by shooting McCree while McGriff was in a motor vehicle, a violation of § 13A-5-40(a)(18), Ala.Code 1975. The jury found, as the only aggravating circumstance, that McGriff had “knowingly created a great risk of death to many persons” and recommended, by a vote of 10 to 2, that McGriff be sentenced to death. The trial court accepted the jury’s recommendation and sentenced McGriff to death by electrocution.
The State’s evidence tended to show the following. On October 22, 1996, as McGriff, Ebra “Yetta” Hayes,[1] and Gabriel *973 Knight,[2] were driving by a residential area on 7th Avenue in Ashford, McGriff leaned out of the car window and fired three shots. One shot hit McCree in the back, fatally wounding him. The coroner testified that McCree died from a gunshot wound that entered his chest cavity through his back; the bullet pierced both lungs and his aorta.
Jeffery McCree, the victim’s brother, was present at the shooting and testified to the events surrounding his brother’s death. Jeffery testified that on October 22, 1996, he, his brother, Chance Jones, and Alan Shorter were parked in Shorter’s car in the parking lot of an abandoned nightclub in Ashford. Approximately 30 or 40 people had gathered in the parking lot. At approximately 5:15 p.m. a shot rang out. Jeffery saw a green car, driven by Yetta Hayes, pass by the club. McGriff was riding in the front passenger seat and was leaning out of the window with a gun in his hand. After the first shot was fired, the group in the parking lot scattered. Michael McCree tried to hide from the flying bullets. Two more shots were fired and the green car drove away. Jeffery then saw his brother lying on the ground; he had been shot in the back. Jeffery and Shorter put Michael in Shorter’s car and drove him to Southeast Alabama Medical Center. Attempts to revive him were unsuccessful, and McCree died shortly after reaching the hospital.
Chance Jones also testified that he was with the victim and Jeffery McCree in the club parking lot at the time of the shooting. He said that there were about 30 or 40 people in the area and that McCree was standing beside his car when a green car drove by slowly. According to Jones, McGriff leaned out of the passenger side window, fired one shot, and then fired two shots in succession. After the gunfire stopped, Jones saw that McCree had been shot. Jones walked toward McCree and saw what he described as a liver on the ground near McCree’s body. Jones also said that when the green car passed he heard McGriff yell, “I told you I was going to get you.”
Police were dispatched to the hospital to investigate the shooting. Deputy Ashley Forehand interviewed Jeffery McCree and Alan Shorter in the loading-dock area near the emergency room entrance. The three had a clear view of the streets near the hospital during the interview. While Forehand was interviewing the two witnesses, a green car passed by the hospital. Jeffery and Shorter identified the car as the car that had been involved in the shooting. Forehand pursued the vehicle, radioed for backup, and stopped the vehicle. McGriff was sitting in the passenger side, Forehand said, and when McGriff opened his door a hard object hit the pavement. A .44 caliber revolver was recovered near the car door. Forensic testing identified this gun as the murder weapon. All three occupants of the car were taken into custody.
Deputy Keith Cook of the Houston County Sheriffs Department testified that while he transported McGriff from Ash-ford to the county jail, McGriff stated that he had shot McCree and that he would not lose any sleep over it. McGriff also gave a formal statement to police after he was taken to the jail. McGriff told police that he had shot McCree but that he had not intended to kill him. He said that he had *974 been aiming at a car parked near McCree when he fired the fatal shot.
At trial McGriff admitted that he had fired the fatal shot. In opening statement, counsel said that McGriff had fired the shot that had killed McCree but that the crime was not a capital offense because, he said, McGriff did not intend to kill McCree. McGriffs defense was that he had been aiming at the car McCree was standing near when he fired the fatal shot. He called witnesses who testified that earlier in the day of the murder, McCree and McGriff had had a confrontation and that McCree and two others, Jerry Thompson and “Scat” Walker, had been chasing McGriff and his companions and throwing gasoline bombs at the car McGriff was riding in. According to witnesses, these events occurred about five hours before McCree was shot and killed.

Standard of Review

Because McGriff has been sentenced to death, this Court must review the record of the trial proceedings to determine if there was any plain error. Rule 45A, Ala. R.App.P., states:
“In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant.”
See also Rule 103(d), Ala.R.Evid., which states: “Nothing in this rule precludes taking notice of plain errors affecting substantial rights in a case in which the death penalty has been imposed, even if they were not brought to the attention of the court.”
This Court has stated the following about “plain error”:
“ ‘Plain error’ has been defined as error ‘so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.’ Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). ‘To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s “substantial rights,” but it must also have an unfair prejudicial impact on the jury’s deliberations.’ Hyde v. State, 778 So.2d 199 (Ala.Cr.App.1998). This court has recognized that ‘ “the plain error exception to the contemporaneous-objection rule is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.’ ” ’ Burton v. State, 651 So.2d 641, 645 (Ala.Cr.App.1993), aff'd, 651 So.2d 659 (Ala.1994), cert. denied, 514 U.S. 1115, 115 S.Ct. 1973, 131 L.Ed.2d 862 (1995), quoting United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting, in turn, United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)).”
Jackson v. State, 791 So.2d 979 (AIa.Crim. App.2000). We will review the arguments made in brief whether or not they were brought to the attention of the trial court. However, the failure of McGriff to object at trial to any claimed error on appeal will weigh against any claim of prejudice McGriff raises on appeal. James v. State, 788 So.2d 185 (Ala.Crim.App.2000).

Guiltr-Phase Issues

I.
McGriff argues that the trial court erred in denying his application for youthful offender status. Specifically, he contends that the probation officer’s report, *975 which the trial court relied upon in denying his application, was deficient because the probation officer did not personally interview McGriff before compiling the report.
Section 15-19-l(a), Ala.Code 1975, commonly referred to as the “Youthful Offender Act,” states, in part:
“(a) A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more shall, and, if charged with a lesser crime may be investigated and examined by the court to determine whether he should be tried as a youthful offender.... ”
The Alabama Supreme Court, interpreting the obligation of a trial court when a defendant has applied for youthful offender status, stated that a trial court is not obliged to order a full-blown investigation by a probation officer in each instance where such an application is made. The Supreme Court stated in Clemmons v. State, 294 Ala. 746, 321 So.2d 238 (Ala.), on remand, 56 Ala.App. 728, 321 So.2d 243 (Ala.Crim.App.1975):
“While our statute seems to require an investigation in certain cases, we do not read it to require the trial court to order an investigation by a probation officer in every case. In fact, § 266(5) of Tit. 15 places a duty on the probation officers to make such investigations as requested by the court. We read this to mean that referral to the probation officer for an investigation is a discretionary matter with the trial court, not mandatory. ...
“As we read the statute, the requirement that an investigation be made means only that the trial court should conduct or order such investigation as is necessary in each case, including an investigation by the probation officer, if it sees fit, but not necessarily, for the development of such facts as are required for a determination of whether the defendant is eligible for youthful offender treatment.
“Obviously, the court will not require an investigation by a probation officer in every case. In many cases, sufficient facts for a determination will be available without a probation officer’s report.
“The court would naturally consider such matters as the nature of the crime charged, prior convictions, or absence thereof — all of which can be ascertained without a lengthy, time consuming investigation by the probation officer.
“We do not believe the legislature intended that each case must be referred to a probation officer for an investigation. Nor do we read the statute to require a full, formal hearing in every case. All that [is] required of the trial court, assuming the defendant consents, is such investigation and examination of the defendant as is sufficient to enable the judge to make an intelligent determination of whether, in his discretion, the defendant is eligible to be treated as a youthful offender, rather than being tried, and if found guilty, sentenced in the normal criminal process.”
294 Ala. at 748-49, 321 So.2d at 241. See also Watkins v. State, 357 So.2d 156 (Ala.Crim.App.1977), cert. denied, Ex parte State ex rel. Atty. Gen., 357 So.2d 161 (Ala.1978) (“The Youthful Offender Act does not require a full, formal hearing or an investigation and examination of the defendant by a probation officer in every case.”).
Here, the record reflects that when McGriff applied for youthful offender status the trial court ordered that an investigation be made into McGriff s background. (C.R. 10.) The trial court held a hearing on *976 McGriffs application; at the hearing the prosecutor stated that McGriff had applied for youthful offender treatment in the past, on an unrelated offense, and that that application had been denied. (R. 4.) The trial court noted the fact that McGriff was 20 years old at the time of the commission of the offense was a mitigating factor; however, the trial court opined that McGriff had committed this offense five days after being released from jail on a unrelated offense. The following entry was made on the case action summary sheet after the youthful offender hearing, “After investigation and examination of the defendant by this Court, defendant’s application of Youthful Offender Treatment is hereby denied.” (C.R. 2.)
As this Court stated in Hyde v. State, 778 So.2d 199, 224-25 (Ala.Crim.App.1998):
“The trial court has almost absolute discretion in deciding whether to grant or to deny a defendant treatment as a youthful offender, and that decision will not be overturned absent an affirmative showing that the decision was arbitrary or was made without some investigation or examination of the defendant. Burks v. State, 600 So.2d 374 (Ala.Cr.App.1991); Barnett v. State, 348 So.2d 512 (Ala.Cr.App.), cert. denied, 351 So.2d 571 (Ala.1977). The trial court is not required to turn each case over to a probation officer for an investigation and is not required to conduct a formal hearing in every case. Burks, supra; Arrington v. State, 513 So.2d 40 (Ala.Cr.App.1987). All that is required is that the trial court undertake an examination of the defendant sufficient to enable it to make an intelligent determination as to whether, in its discretion, the defendant is eligible for treatment as a youthful offender. Burks, supra. Finally, the trial court may consider the nature of the facts of the particular case in denying an application for treatment as a youthful offender. Fields v. State, 644 So.2d 1322 (Ala.Cr.App.1994). Although the trial court did not conduct a formal evidentiary hearing on the appellant’s application for treatment as a youthful offender, the court clearly indicated that it considered the circumstances of the case as well as the charge itself in denying the application. Because the facts of this case are extremely serious, the trial court did not abuse its discretion in denying the appellant’s request for treatment as a youthful offender. Barnett, supra.”
Here, the trial court complied with its duties as proscribed in § 15-19-1. The trial court did not abuse its “almost absolute discretion” in denying McGriffs application for youthful offender status.
II.
McGriff next argues that the trial court erred in denying his motion for a continuance because of the late disclosure of a statement by a witness for the State regarding something McGriff had said.
The record reflects that on September 17, 1997, before trial was scheduled to begin on September 22, 1997, McGriff moved for a continuance, arguing that although he had been furnished a copy of an incriminating statement made by McGriff in the presence of a State’s witness, he had not had enough time to review the statement. McGriff was given a copy of the statement on September 16, 1997. McGriff argues that he needed more time to investigate the circumstances surrounding the statement and that the trial court erred in not granting his motion for a continuance. The motion concerned a statement made by State’s witness Chance Jones. Jones testified that McGriff yelled after he fired the fatal shots, “I told you I *977 was going to get you.” The trial court held a hearing on the motion and denied the request for a continuance.
McGriff has failed to show how he was prejudiced by the alleged late disclosure. As this Court stated in Thomas v. State, 508 So.2d 310, 313 (Ala.Crim.App.1987):
“ ‘The appellant provides no evidence that the untimeliness of the State’s compliance prejudiced her case. Moreover, this court has found that even if the State failed to comply with an order for discovery, the items may still be admissible because the State offered the defense counsel an opportunity to inspect and examine them in accordance with Rule 18.5(a), Alabama Temporary Rules of Criminal Procedure [now Rule 16, Ala.R.Crim.P.]. Clemons v. State, 491 So.2d 1060 (Ala.Cr.App.1986).’ ”
Quoting Robinson v. State, 528 So.2d 343, 346 (Ala.Crim.App.1986).
As stated above, McGriff does not say how the alleged late disclosure prejudiced his case. The statement was furnished to the defense six days before trial was scheduled to begin. Also, the record reflects that defense counsel vigorously cross-examined this witness about the circumstances surrounding this statement. It was disclosed during cross-examination that Jones had not told the prosecution that McGriff had made this statement until several weeks before trial. The exact date that the State obtained this information is not included in the record. However, we know that the State did not have this information until approximately two weeks before trial. Defense counsel also vigorously cross-examined this witness as to why the witness waited so long to tell the State what McGriff had said immediately after the shooting. There is absolutely no evidence that McGriff was prejudiced by the allegedly late disclosure.
Moreover, “The law in Alabama is well settled that continuances are not favored.” Ritter v. State, 494 So.2d 76, 78 (Ala.Civ.App.1986), citing Madison v. Weldon, 446 So.2d 21 (Ala.1984). “ ‘[T]he reversal of a conviction because of the refusal of the trial judge to grant a continuance requires “a positive demonstration of abuse of judicial discretion.” Clayton v. State, 45 Ala.App. 127, 226 So.2d 671, 672 (1969).’ Beauregard v. State, 372 So.2d 37, 43 (Ala.Cr.App.), writ denied, 372 So.2d 44 (Ala.1979).” Loggins v. State, 771 So.2d 1070, 1084 (Ala.Crim.App.1999). There has been no such showing in this case.
III.
McGriff argues that the trial court erred in failing to quash his venire because, he says, blacks were underrepresented. The record reflects that 150 people were called for jury service the week of McGriffs trial. Of the 150 people called for service, 29 were black. After the initial questioning of the venire and after strikes for cause were granted, the venire consisted of 40 people — 36 whites, 3 blacks and 1 Hispanic. Defense counsel moved to quash the venire because of the alleged underrepresentation of blacks. Defense counsel did not furnish any evidence in support of this contention.
As this Court has noted:
“In Abernathy v. State, 642 So.2d 519, 522-23 (Ala.Cr.App.1994), this court stated that three things must be proven in order for the trial court to quash the jury venire: (1) that the group that is alleged to be excluded is a distinctive group in the community; (2) that the representation of the group on the present venire is not fair and reasonable compared to the percentage of that group in the community; and (3) that the underrepresentation is caused by a *978 systematic exclusion of the group in the selection process.”
Guthrie v. State, 689 So.2d 935, 939 (Ala.Crim.App.), on remand, 689 So.2d 948 (Ala.Crim.App.1996), aff'd, 689 So.2d 951 (Ala.), cert. denied, 522 U.S. 848, 118 S.Ct. 135, 139 L.Ed.2d 84 (1997). As stated above, McGriff furnished absolutely no evidence in support of any of the three factors articulated in Guthrie. McGriff has failed to meet his burden of proving that the jury venire should have been quashed. Indeed, it is not clear from the record even what method that Houston County uses to select prospective jurors.
IV.
McGriff argues that he was entitled to have his jury sequestered because under Rule 19.3, Ala.R.Crim.P., the jury could be separated only with the consent of all the parties. At the time of McGriff s trial Rule 19.3(a)(1), AIa.R.Crim.P., read as follows:
“In any prosecution for a capital felony, upon the consent in open court of the defendant, defendant’s counsel, and the district attorney, the trial court, in its discretion, may permit the jury trying the case to separate during the pen-dency of the trial, whether the jury has retired or not.”
Rule 19.3(a) was amended on December 1, 1997, to read as follows:
“In the prosecution of any felony case, the trial court, in its discretion, may permit the jury hearing the case to separate during the pendency of the trial. Such a separation of the jury shall create a prima facie presumption that the accused was not prejudiced by reason of the separation.”
The rule as amended makes no distinction between capital and noncapital cases and gives the trial court absolute discretion to permit the jury to separate during the pendency of a capital trial.
McGriff argues in his brief that he is aware of this Court’s decisions holding that the 1995 amendment to § 12-16-9, Ala.Code 1975, supercedes the rule and effectively repealed the earlier version of Rule 19.3(a)(1). See Smith v. State, 727 So.2d 147 (Ala.Crim.App.1998), aff'd, 727 So.2d 173 (Ala.), cert. denied, 528 U.S. 833, 120 S.Ct. 145, 145 L.Ed.2d 77 (1999), and Stewart v. State, 730 So.2d 1203 (Ala.Crim.App.1996), aff'd, 730 So.2d 1246 (Ala.), cert. denied, 528 U.S. 846, 120 S.Ct. 119, 145 L.Ed.2d 101 (1999). Section 12-16-9 reads:
“In the prosecution of any felony case the trial court in its discretion may permit the jury hearing the case to separate during the pendency of the trial. The court may at any time on its own initiative or on motion of any party, require that the jury be sequestered under the charge of a proper officer whenever they leave the jury box or the court may allow them to separate. A motion to separate or sequester shall not be made within the hearing of the jury, and the jury shall not be informed which party, if any, requested separation or sequestration.”
However, McGriff asserts that this Court’s holdings in Smith and Stewart are in error because, he says, they are inconsistent with the history of Rule 19.3 and § 12 — 16— 9.
This issue has been resolved by the Alabama Supreme Court. In Ex parte Stewart, 730 So.2d 1246 (Ala.), cert. denied, 528 U.S. 846, 120 S.Ct. 119, 145 L.Ed.2d 101 (1999), the Court stated, “We conclude that the Court of Criminal Appeals correctly held that the amended § 12-16-9 controlled the separation issue.” This Court is bound by the decisions of the Alabama Supreme Court and may not re *979 visit this issue, absent a change in the law by the Legislature or the Alabama Supreme Court. Section 12-3-16, Ala.Code 1975. The trial court correctly allowed the jury to separate without first obtaining the consent of the parties.
V.
McGriff argues that the prosecution violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by striking prospective jurors based on their race and gender. The United States Supreme Court in Batson held that black prospective jurors could not be struck from a black defendant’s jury solely on the basis of race. This holding was extended to apply to white defendants in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); to defense counsel in criminal cases in Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); to white prospective jurors in White Consolidated Industries, Inc. v. American Liberty Insurance Co., 617 So.2d 657 (Ala.1993); and to gender in J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
McGriff argues that the State used 9 of its 14 peremptory strikes to exclude males from the venire and that in doing so the State violated his constitutional rights. He contends that he is entitled to a new trial unless the State can rebut his prima facie showing of gender discrimination.
Initially, we observe that no objection was made during trial on the basis that the State used its strikes in a gender-biased manner. The only Batson-related objection was that a black prospective juror was struck based on his race. Thus, our review of this issue is limited to determining whether plain error occurred. Rule 45A, Ala.R.App.P.
The strike list does not include the race or the gender of the jurors; however, the jury venire list does contain this information. The record reflects that the prosecution used 9 of its 14 strikes to remove males and that McGriff used 9 of his 14 strikes to remove males. This Court addressed an identical claim in Perkins v. State, 808 So.2d 1041 (Ala.Crim.App.1999), and determined it adversely to the appellant. In Perkins, we stated:
“In a Batson claim, the plain-error analysis is triggered only if the record supports an inference that the prosecution engaged in purposeful discrimination. See Ex parte Watkins, 509 So.2d 1074 (Ala.), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).
“On appeal, the only evidence Perkins offers in support of his claim that the prosecutor discriminated against men is that the prosecutor used 11 of his 18 peremptory challenges to remove men from the venire. In Ex parte Trawick, 698 So.2d 162 (Ala.), cert. denied, 522 U.S. 1000, 118 S.Ct. 568, 139 L.Ed.2d 408 (1997), the Alabama Supreme Court held:
“ ‘A party making a Batson or J.E.B. challenge bears the burden of proving a prima facie case of discrimination and, in the absence of such proof, the prosecution is not required to state its reasons for its peremptory challenges. Ex parte Branch, 526 So.2d 609 (Ala.1987); Ex parte Bird, 594 So.2d 676 (Ala.1991). In Branch, this Court discussed a number of relevant factors a defendant could submit in attempting to establish a prima fa-cie case of racial discrimination; those factors are likewise applicable in the case of a defendant seeking to establish gender discrimination in the jury selection process. Those factors, stated in a manner applicable to gender discrimination, are as follows: (1) evi *980 dence that the jurors in question shared only the characteristic of gender and were in all other respects as heterogenous as the community as a whole; (2) a pattern of strikes against jurors of one gender on the particular venire; (3) the past conduct of the state’s attorney in using peremptory challenges to strike members of one gender; (4) the type and manner of the state’s questions and statements during voir dire; (5) the type and manner of questions directed to the challenged juror, including a lack of questions; (6) disparate treatment of members of the jury venire who had the same characteristics or who answered a question in the same manner or in a similar manner; and (7) separate examination of members of the venire. Additionally, the court may consider whether the State used all or most of its strikes against members of one gender.’
“698 So.2d at 167-68. See also Willie Burgess v. State, 827 So.2d 134 (Ala.Cr.App.1998).
“Here, we have thoroughly reviewed the record in light of the factors set out in Branch, and we find no evidence that the male veniremembers who were struck by the State shared only the characteristics of gender. We find nothing in the type or manner of the prosecutor’s questions during the extensive voir dire examination that indicates any intent to discriminate against male jurors; nor do we find a lack of meaningful voir dire directed at male jurors. On the contrary, it appears that male and female jurors alike were thoroughly questioned regarding their personal opinions on issues ranging from circumstantial evidence to the death penalty. Furthermore, Perkins has provided no evidence that the prosecutor in this case had a history of misusing peremptory challenges so as to discriminate against either gender. Although Perkins has raised a claim of gender discrimination on appeal, that is all he has done — raise the claim. He offers this court nothing, other than the number of men struck, to support his contention that the State improperly struck jurors based solely on their gender. “Without more, we do not find that the number of strikes this prosecutor used to remove [men] from the venire is sufficient to establish a prima facie case of gender discrimination.’ Ex parte Trawick, 698 So.2d at 168. See also Armstrong v. State, 710 So.2d 531 (Ala.Cr.App.1997); Merri-weather v. State, 629 So.2d 77 (Ala.Cr.App.1993).”
808 So.2d at 1078. No J.E.B. violation is indicated by the record; thus, we find no plain error here.
McGriff further argues that the State violated Batson by striking a black prospective juror from his venire solely, he says, because of the juror’s race. The record reflects that after the court granted strikes for cause, three black prospective jurors remained on the venire. The prosecution used one of its strikes to remove A.M., a black prospective juror. After the jury was struck McGriff made a Batson objection, arguing that the prosecution violated Batson by striking A.M., because this juror did not answer any questions during voir dire examination. The trial court asked the prosecution to state its reason for striking this juror. The prosecution stated that this juror was struck because when his office ran the jurors’ names through a criminal database it was discovered that this juror had pleaded guilty in 1991 to a charge of resisting arrest.[3] De *981 fense counsel objected, arguing that a conviction in 1991 was too remote in time to justify removal from the jury. The trial court found that the prosecution’s reason was race-neutral and denied the Batson motion.
Peremptory strikes based on the criminal record of a prospective juror do not violate Batson. Darby v. State, 601 So.2d 117 (Ala.Crim.App.1989). Moreover, “ ‘[w]e will not reverse a trial court’s Bat-son ruling unless it is clearly erroneous. Great deference should be accorded a trial court’s Batson ruling.’ Davis v. State, 718 So.2d 1148, 1158 (Ala.Cr.App.1995) (citations omitted), aff'd, 718 So.2d 1166 (Ala.1998), cert. denied, 525 U.S. 1179, 119 S.Ct. 1117, 143 L.Ed.2d 112 (1999).” Taylor v. State, 808 So.2d 1148, 1163 (Ala.Crim.App.2000). There is absolutely no reason to overrule the trial court’s ruling here.
VI.
McGriff argues that the trial court erred in denying his motion styled as a motion “To Require Disclosure Of Any And All Information Concerning Prospective Jurors That May Be Favorable To The Defense.” (C.R. 34.) The trial court, at the hearing on this motion, stated:
“The next motion is [a] motion to require disclosure of any and all information concerning prospective jurors that would be favorable to the defense. Of course, I have heard these motions in several of the other capital cases. And I have not then nor would I require and put the burden on the State to reveal anything that they might know about jurors. Because if I did that and something they thought was not relevant or was exculpatory or not, then they would be under attack for not revealing that.
“They would have to be making a judicial decision on every bit of information that any member of the D.A.’s office and law enforcement have. And that’s just an impossible burden, so I will deny that motion.”
(R. 65-66.)
The trial court’s ruling was correct. The State has no duty to disclose information concerning prospective jurors. As we stated in Arthur v. State, 711 So.2d 1031 (Ala.Crim.App.1996), aff'd, 711 So.2d 1097 (Ala.1997), quoting Kelley v. State, 602 So.2d 473 (Ala.Crim.App.1992):
“ ‘This court has held that arrest and conviction records of potential jurors do not qualify as the type of discoverable evidence that falls within the scope of Brady and that a trial court will not be held in error for denying an appellant’s motion to discover such documents. Slinker v. State, 344 So.2d 1264 (Ala.Cr.App.1977). Cf., Clifton v. State, 545 So.2d 173 (Ala.Cr.App.1988) (the nondis-closed evidence was not exculpatory, thus Brady was inapplicable). In other words, the appellant does not have an absolute right to the disclosure of the arrest and conviction records of prospective jurors. See Slinker, supra. Cf., Davis v. State, 554 So.2d 1094 (Ala.Cr. App.1984), affd, 554 So.2d 1111 (Ala. 1989), rehearing overruled, 569 So.2d 738 (AIa.1990), cert, denied, 498 U.S. 1127, 111 S.Ct. 1091, 112 L.Ed.2d 1196 (1991) (defendant is not entitled to the general disclosure of the criminal records of the state’s witnesses); Wright v. State, 424 So.2d 684 (Ala.Cr.App.1982) (no absolute right to disclosure of criminal records of state’s witnesses).
“ ‘Several jurisdictions have similarly held. See, e.g., People v. Murtishaw, *982 29 Cal.3d 733, 175 Cal.Rptr. 738, 631 P.2d 446 (1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 464 (1982) (trial judge has discretionary authority to permit defense access to jury records); Moon v. State, 258 Ga. 748, 375 S.E.2d 442 (1988), cert. denied, 499 U.S. 982, 111 S.Ct. 1638, 113 L.Ed.2d 733 (1991) (trial court did not err in denying defendant’s motion for pretrial discovery of state’s juror information records); State v. Wiggins, 556 So.2d 622 (La.App.1990) (defendant is not necessarily entitled to “rap sheets” of prospective jurors); State v. Weiland, 540 So.2d 1288 (La.App.1989) (defendant is not entitled to rap sheets of prospective jurors because those records are useful to state in its desire to challenge jurors with inclinations or biases against state, but are not pertinent to purpose of defendant’s voir dire: to challenge jurors who defendant believes will not approach the verdict in a detached and objective manner); State v. Childs, 299 S.C. 471, 385 S.E.2d 839 (1989) (no right to discovery of criminal records of potential jurors absent statute or court rules requiring such disclosure); Jeffrey F. Ghent, Annot., Right of Defense in Criminal Prosecution to Disclosure of Prosecution Information Regarding Prospective Jurors, 86 A.L.R.3d 571, § 4(a) (1978), and the cases cited therein.
“‘Also, the state has no duty to disclose information that is available to the appellant from another source. Hurst v. State, 469 So.2d 720 (Ala.Cr.App.1985). Here, the appellant could have procured this information from the venire-members themselves during voir dire. See also Clifton, supra (nondisclosure did not prejudice appellant’s defense).’ ”
711 So.2d at 1080.
McGriff also argues, in a footnote in his brief, that the trial court erred in denying his request to have potential jurors complete a juror questionnaire. The trial court, when ruling on the request, stated:
“Well, I will deny the motion for jury questionnaire. I have always had problems with them because jurors are more apt just not to answer something or misunderstand the question.
“And then, basically, I think even with the questionnaire, the attorneys need to just go back. I just don’t think attorneys should rely on that questionnaire, because it’s just too — it’s too likely that a juror may have just not answered a question or not answered it properly if they are able to just do that at home. I don’t believe they take them as serious as they do here in the courtroom under oath. So I will deny the motion for jury questionnaire.”
(R. 76-77.) The trial court committed no error in denying the request that potential jurors complete juror questionnaires. As this Court recently stated concerning the same issue:
“This exact issue was before our Supreme Court in Ex parte Land, [678 So.2d 224 (Ala.), cert. denied, 519 U.S. 933, 117 S.Ct. 308, 136 L.Ed.2d 224 (1996)]. In Ex parte Land, Justice Butts, writing for the Court, stated:
“ ‘A trial court is vested with great discretion in determining how voir dire examination will be conducted, and that court’s decision on how extensive a voir dire examination is required will not be overturned except for an abuse of the discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Lane v. State, 644 So.2d 1318 (Ala.Cr.App.1994); Harris v. State, 632 So.2d 503 (Ala.Cr.App.1992), af *983 firmed, 632 So.2d 543 (Ala.1993), affirmed, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).’
“678 So.2d at 242.”
Griffin v. State, 790 So.2d 267, 313 (Ala.Crim.App.1999). We find no abuse of discretion in the method of voir dire employed in this case.
VII.
McGriff argues that his statement to police should have been suppressed because, he says, the State failed to prove that the statement was voluntary. McGriff told police that he had shot McCree but that he had not intended to shoot him or to kill him. He said that he had been aiming at a nearby car when he fired the shot.
When reviewing a claim questioning the voluntariness of a statement we apply the standard articulated by the Alabama Supreme Court in McLeod v. State, 718 So.2d 727 (Ala.), on remand, 718 So.2d 731 (Ala.Crim.App.), cert. denied, 524 U.S. 929, 118 S.Ct. 2327, 141 L.Ed.2d 701 (1998). The McLeod court stated:
“For a confession, or an inculpatory statement, to be admissible, the State must prove by a preponderance of the evidence that it was voluntary. Ex parte Singleton, 465 So.2d 443, 445 (Ala.1985). The initial determination is made by the trial court. Singleton, 465 So.2d at 445. The trial court’s determination will not be disturbed unless it is contrary to the great weight of the evidence or is manifestly wrong. Marschke v. State, 450 So.2d 177 (Ala.Crim.App.1984)....
[[Image here]]
“It has long been held that a confession, or any inculpatory statement, is involuntary if it is either coerced through force or induced through an express or implied promise of leniency. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). In Culombe, 367 U.S. at 602, 81 S.Ct. 1860, the Supreme Court of the United States explained that for a confession to be voluntary, the defendant must have the capacity to exercise his own free will in choosing to confess. If his capacity has been impaired, that is, ‘if his will has been overborne’ by coercion or inducement, then the confession is involuntary and cannot be admitted into evidence. Id. (emphasis added in McLeod).
“The Supreme Court has stated that when a court is determining whether a confession was given voluntarily it must consider the ‘totality of the circumstances.’ Boulden v. Holman, 394 U.S. 478, 480, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969); Greenwald v. Wisconsin, 390 U.S. 519, 521, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); see Beecher v. Alabama, 389 U.S. 35, 38, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967). Alabama courts have also held that a court must consider the totality of the circumstances to determine if the defendant’s will was overborne by coercion or inducement. See Ex parte Matthews, 601 So.2d 52, 54 (Ala.) (stating that a court must analyze a confession by looking at the totality of the circumstances), cert. denied, 505 U.S. 1206, 112 S.Ct. 2996, 120 L.Ed.2d 872 (1992); Jackson v. State, 562 So.2d 1373, 1380 (Ala.Crim.App.1990) (stating that, to admit a confession, a court must determine that the defendant’s will was not overborne by pressures and circumstances swirling around him); Eakes v. State, 387 So.2d 855, 859 (Ala.Crim.App.1978) (stating that the true test to be employed is ‘whether the defendant’s will was overborne at the time he confessed’) (emphasis added in McLeod).’’
718 So.2d at 729 (emphasis original; footnote omitted).
*984 At the suppression hearing Investigator Richard St. John of the Houston County Sheriffs Department testified that McGriff was brought to the police station in Ash-ford for questioning after two eyewitnesses identified McGriff as the person who shot McCree. As stated earlier in this opinion, the witnesses were talking with police outside the hospital when a green car, driven by Hayes, passed the hospital. The witnesses identified the car as the car involved in the shooting, and Officer Forehand pursued and stopped the vehicle. The occupants of the car were transported to the Ashford police station. St. John testified that McGriff was read his Miranda rights, that he was not threatened or coerced in order to obtain a statement, and that he voluntarily spoke with police. St. John further stated that at the end of the statement McGriff said, “I am telling you the God’s honest truth, on my own will.” Investigator Donald Valenza also testified at the suppression hearing. He said that he did not have a Miranda rights form signed by McGriff because McGriff and the occupants of the car were taken to the Ashford police station, not the sheriffs office, and that he did not have his forms with him or in his car at the time of McGriffs arrest. Valenza also testified that McGriff was read his Miranda rights, that he waived his rights, and that he voluntarily made a statement to police.
We have listened to the tape of the interview with McGriff, and we find nothing to suggest that McGriff was coerced in any way into talking with the police. The tape does skip occasionally, but it does not appear that any pertinent information was deleted because of the skips in the tape. Also, towards the end of the statement McGriff told police, “I am telling you the God’s honest truth, on my own will.” There is nothing in the record that suggests that the trial court’s denial of the motion to suppress was contrary to the great weight of the evidence. McLeod.
Moreover, even if we were to conclude, which we do not, that the statement was involuntary, any possible error in its admission was harmless. McGriffs theory of defense, argued by defense counsel in his opening statement at the guilt phase, was that he shot McCree but that he did not intend to shoot or kill anyone. This is identical to the information contained in McGriffs statement. Thus, even if the statement was erroneously received into evidence, any possible error was harmless beyond a reasonable doubt. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). See also Fisher v. State, 665 So.2d 1014 (Ala.Crim.App.1995); Smith v. State, 623 So.2d 369 (Ala.Crim. App.1992), cert, denied, 510 U.S. 1030, 114 S.Ct. 650,126 L.Ed.2d 607 (1993).
VIII.
McGriff further argues that the trial court erred in allowing into evidence’ at the guilt phase testimony that implied that McGriff had a prior criminal record. The following occurred during the questioning of Investigator Donald Valenza:
“Q [Prosecutor]: Would you tell the ladies and gentlemen of the jury — and this calls for a yes or no answer only. Have you had the opportunity before today to be present in this courtroom in front of the Honorable Ed Jackson with myself representing the State and the Defendant McGriff, Jack Blumenfeld and Billy Joe Sheffield and a court reporter, when the original tape was offered into evidence at a hearing? Yes or no.
“A [Valenza]: We have had some motions. Mr. Valeska, I’m not exactly sure on your questions. I’m sorry.
“Q: Did you testify under oath before in this case?
*985 “A: Yes. I have testified in a case pertaining to Mr. McGriff before, yes.
“Q: Was that in this courtroom?
“A: Yes.
“Q: And was the original tape entered into evidence at that hearing and played?
“A: There was a tape entered as evidence.
“Q: Was that the original?
“A: Yes.
“Q: Thank you. Now, please tell the jury, before you recorded the statement in front of McGriff on October 22, 1996, with yourself present or Chief Sewell from Ashford [Police Department] or Richard St. John with the Houston County Sheriffs Department' — -would you tell the ladies and gentlemen of the jury did you determine if the recording equipment was working properly?
“A: I tested it briefly in the end, yes.”
(R. 626-27; emphasis added.)
Initially, we note that no objection was made to the admission of this testimony; thus, our review is limited to determining whether plain error occurred. Rule 45A, Ala.R.App.P.
McGriff argues that the above testimony never clarified whether Deputy Valenza had testified about another case involving McGriff or had testified in a prior proceeding in this case. McGriffs argument is not supported by the record; it is nothing more than an attempt to distort the record. The record clearly shows, as noted by the emphasized portion above, that Va-lenza was referring to his prior testimony in this case — not an unrelated case that involved McGriff.
Valenza was called to testify to establish the predicate for admitting the tape of McGriffs statement to police. This testimony was relevant to establish the reason for admitting a copy of the tape and not the original. The original tape of the statement had been offered into evidence at a prior hearing in this case. There was absolutely no evidence presented that McGriff had a prior criminal record. No error, much less plain error, occurred here.
IX.
McGriff argues that the trial court committed error by informing the jury, on two occasions,' that there was evidence of McGriffs guilt that had not been presented at trial. The following occurred at the end of the first day of trial:
“And remember my instructions about not receiving any outside information and any media coverage information. There will be something in the paper and there will be something probably on the TV this evening. So you should— when you are watching TV, if something starts coming on, switch it to another channel. And if you are looking at the paper and come upon something that looks like this case, skip over that and go to something else, so that in the morning we won’t have to — if the questions are asked, it won’t be anything.
“Now, the press probably doesn’t know any more about this case than you do. But sometimes they come up with something that you are not supposed to know. And for that reason, make sure that you don’t read anything about it or see anything on the TV.”
(R. 800-01.) The following occurred during the trial court’s instructions to the jury:
“When you go to the jury room, if you desire to listen to the tape of the defendant’s statement to the Sheriffs Department, you will need to let me know, so that I can bring that down.
*986 “There is another statement of someone else on there and that is not in evidence, so I will need to play only the defendant’s statement in your presence along with the court reporter. So you will need to let me know after you begin your deliberations whether you need to listen to that tape or not. And then I will come down and play it for you.”
(R. 967.)
First, we observe that at neither instance was there an objection. Therefore, we must determine whether there is plain error. Rule 45A, Ala.R.App.P. While the failure to object will not bar this Court’s review of this issue, it will weigh against McGriff s claim of prejudice. Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App.1990), aff d, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
McGriff argues that the above comments implied to the jury that there was evidence that had not been presented to them; therefore, he argues, the comments prejudiced him by implying that there was additional evidence of his guilt.
We can conceive of no scenario where the above comments can be said to amount to plain error. We find it significant that no objection was made to either comment. The failure of defense counsel to object to the comments leads this Court to conclude that defense counsel did not find these comments to be prejudicial or objectionable. Kuenzel. We likewise find no plain error as a result of the trial court’s remarks.
X.
McGriff argues that the trial court erred in not allowing a defense witness, Frederick Shaw, to testify about McCree’s, Walker’s, and Thompson’s reputation in the community for violence.
Initially, during defense counsel’s examination of Shaw the trial court would not allow Shaw to testify about McCree’s, Walker’s, or Thompson’s reputation in the community for violence. The trial judge stated that there had been no testimony that the shooting was committed in self-defense; therefore, he was excluding this testimony at that time. However, later in Shaw’s testimony the following occurred:
“Q [Defense counsel]: And again, Mr. Valeska asked you why did you back out of that driveway so fast when you saw Scat [Walker] coming up. Why were you scared of Scat?
“A [Shaw]: Because I know, you know, he had a reputation. And I know he had a reputation for fighting and stuff and carrying on. So, you know, when you have got somebody coming to your car and then the first thing you hear that, you know what I am saying, they are trying to rob this man here on the side of me, my reaction is to pull off fast and go.
“Q: Okay. Were you scared of just Scat or were you scared of the other two [McCree and Thompson], too?
“A: Well, all three of them was together. So, you know what I am saying, I figured that whatever was going to take place, all three of them was going to do it.
“Q: Why were you scared of Jerry Thompson?
“A: Because Jerry he had a reputation, you know, as far as violence and stuff. “[Prosecutor]: Judge, we already — I object.
“[Defense counsel]: No, sir. He opened the door. He said ‘Why did you back out so fast when you saw them coming? Why did you have your doors locked?’
“[Prosecutor]: Object.
*987 “[Defense counsel]: And I am just trying—
“The Court: I will overrule the objection and use it for that basis.
“Q: All right. Now, why were you scared of Jerry Thompson?
“A: He was known for violence, you know what I am saying, and getting in trouble and stuff, you know what I am saying. And I know they used to fight a lot and stuff. So, you know, the first thing I am thinking, hey, you know what I am saying, they might try to double team him and they might try to get me, too. So I don’t know. I’m not trying to stick around and find out.
“Q: Were you afraid of Michael McCree?
“A: To be honest with you, no. He was in the car, so I didn’t know what to expect from him, you know what I am saying. It could have been the same as far as with them two, you know.
“Q: Well, let me ask you this. Did you feel safe because Michael McCree was there? Did that cause you to feel safe?
“A: No.
“Q: Okay. Had you ever seen Michael McCree hanging around Scat and Jerry Thompson before?
“A: Yeah, I have.
“Q: How many times? One or two times? A hundred times?
“A: Plenty, you know.
“Q: Give me your best estimate.
“A: I’d say at least about 15, 20 times that I seen, you know what I am saying.
“Q: Had you ever seen Michael McCree and Scat and Jerry Thompson in any of those clubs around Ashford? The Sunset Club?
“A: Yeah.
“Q: Have you even seen them get in a fight?
“A: I mostly seen like Jerry and Scat, you know.”
(R. 781-82.)
Clearly, the above-quoted portion of the record shows that McGriff was allowed to present evidence about McCree’s, Walker’s, and Thompson’s reputations in the community. No error occurred here.
XI.
McGriff argues that the trial court erred to reversal by excluding evidence as to why McGriff and his friends did not go to the police after their car chase with McCree, Walker, and Thompson earlier on the day of the murder. Specifically, he contends that the trial court erred by not allowing defense witness Frederick Shaw to testify as to why he and McGriff did not report the car chase and gas bombings to the police. Shaw was allowed to state why the group did not go to police before the murder. The following occurred:
“Q [Defense counsel]: Okay. So why didn’t you call the Sheriffs Department when you got to Ebra’s in Webb?
“A: To be honest with you, you know what I am saying, I was not thinking about, you know what I am saying, calling the police or nothing like that, you know. I am like wondering still what’s going on, you know what I am saying. I didn’t know what was going on, so, you know, I wasn’t thinking. I wasn’t in the right mind of thinking about calling no police or nothing like that, you, know.
“Q: You are saying you were scared? “A: Yes. Basically yeah, I was scared.
“Q: How scared were you? Were you shaking? Were you trembling?
“A: Yeah.
“Q: Did you ever observe Dennis McGriff after you got out at Webb? Did you look at him?
*988 “A: Yes, sir.
“Q: Was he shaking or trembling?
“A: Yeah. He was scared, you know, frustrated and stuff, you know. I imagine he was basically the same as me because, like I said, I didn’t know what was going on. And, you know, for something like that to happen to me, you know what I am saying, I didn’t have no choice but to be scared.”
(R. 784.) (Emphasis added.) Shaw was also asked this question earlier in his testimony, see R. 708. Shaw was allowed to testify as to why he did not report the incident to police. No reversible error occurred here.
XII.
McGriff argues that the trial court erred in allowing several instances of inadmissible hearsay to be received into evidence at trial.
“ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala.R.Evid. The admission of hearsay evidence may be rendered harmless if there is overwhelming evidence of guilt, see Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2000), or if no objection was made at the time of its admission, if its admission did not affect the substantial rights of the appellant, see Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997).
A.
McGriff argues that the court erred in allowing his codefendant’s mother, Evelyn Hayes, to testify about a statement her daughter made to police on the day of the murder. The following occurred:
“Q [Prosecutor]: Ms. Hayes, if I could just ask you, please, ma’am. You had a key to your house and your husband [had a key], correct?
“[Evelyn Hayes]: Yes.
“Q: And your daughter?
“A: Yes.
“Q: Gabriel Omar Knight as well as Dennis McGriff did not have keys to your house, correct?
“A: Yes, sir.
“Q: Now, what I want to ask you, have you talked to your daughter’s lawyers at all? I’m not going to get into anything. But what I am asking you is: Did they tell you your daughter made a statement, that she told the police and made a statement?
“A: Yes. She made a statement. Yes.
“Q: And I will ask you, please, ma’am, did they indicate anything or that you looked at the statement that your daughter told them who got the gun out of the house? Do you remember that?
“A: Yes, sir.
“Q: And was that one of the three men that are charged — two men that are charged in this ease as well as your daughter?
“A: Yes, sir.”
(R. 575-76.)
Defense counsel did not object immediately upon the admission of this testimony; however, an objection to this testimony was made at the end of Evelyn Hayes’s testimony. (R. 579.)
McGriff argues that the evidence elicited from Hayes was extremely prejudicial hearsay that warrants reversal of his conviction. Based on the record before us we believe that any error was, at most, harmless beyond a reasonable doubt.
*989 As this Court stated in Jackson v. State, 791 So.2d 979, 1024 (Ala.Crim.App.2000):
“It is well settled that a nontestifying codefendant’s statement to police implicating the accused in the crime is inadmissible against the accused; it does not fall within any recognized exception to the hearsay rule and, absent a showing of reliability, its introduction violates the accused’s confrontation rights. See Lee v. Illinois, 476 U.S. 580, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); R.L.B. v. State, 647 So.2d 803 (Ala.Cr.App.1994); Ephraim v. State, 627 So.2d 1102 (Ala.Cr.App.1993).
“However, even assuming that Jackson was denied his right of confrontation by the prosecutor’s questions regarding Reed’s statement to police, we find that any error was harmless. ‘A denial of the right to confrontation may, in some circumstances, result in harmless error.’ James v. State, 723 So.2d 776, 781 (Ala.Cr.App.), aff'd, 723 So.2d 786 (Ala.1998). In Whitehead v. State, 777 So.2d 781, 847 (Ala.Cr.App.1999), we stated:
“ ‘ “After finding error, an appellate court may still affirm a conviction or sentence on the ground that the error was harmless, if indeed it was. Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)]; Sattari v. State, 577 So.2d 535 (Ala.Cr.App.1990), cert. denied, 577 So.2d 540 (Ala.1991); A.R.App.P. 45. Moreover, the harmless error rule applies in capital cases. Ex parte Whisenhant, 482 So.2d 1241 (Ala.1983); Henderson v. State, 583 So.2d 276 (Ala.Cr.App.1990), aff'd, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992); Musgrove v. State, 519 So.2d 565 (Ala.Cr.App.), aff'd, 519 So.2d 586 (Ala.1986), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (1988). In order for a constitutional error to be deemed harmless under Chapman, the state must prove beyond a reasonable doubt that the error did not contribute to the verdict and/or sentence.... In order for the error to be deemed harmless under Ala. RApp.P. 45, the state must establish that the error did not or probably did not injuriously affect the appellant’s substantial rights.... The purpose of the harmless error rule is to avoid setting aside a conviction or sentence for small errors or defects that have little, if any, likelihood of changing the result of the trial or sentencing. We conclude that the error could not have contributed to the sentence, nor injuriously affected a substantial right of the appellant.”
“ ‘Davis v. State, 718 So.2d 1148, 1164 (Ala.Cr.App.1995); see also Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (“[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.”). Further, plain error only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. See Bush v. State, 695 So.2d 70, 87 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, [522] U.S. [969], 118 S.Ct. 418, 139 L.Ed.2d 320 (1997); Rule 45A, Ala.R.App.P. The United States Supreme Court has recognized that most errors do not automatically render a *990 trial unfair and, thus, can be harmless. See Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). This includes the improper admission of evidence at the sentencing stage of a capital case. See Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988).’
“791 So.2d at 1024-25.”
Mrs. Hayes did not identify which one of the three defendants took the gun from her home. Indeed, her testimony implies that her daughter, who was the only one of the three who had a key to her home, took the gun. Also, it was uncontested at trial that McGriff fired the shot that killed McCree. The only contested issue was whether McGriff intended to kill McCree. We fail to see how the above evidence— that did not identify the individual who took the gun from the Hayes’s house— resulted in prejudice to McGriff that mandates reversal of the judgment in this case. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
B.
McGriff also contends that it was reversible error to allow Corp. Larry Flowers[4] to testify about a conversation he had with Jerry Thompson concerning the shooting. The following occurred during Corp. Flowers’s cross-examination by the prosecutor:
“Q: Corporal Flowers, I know it’s been a long time since this occurred, but I want to ask you — Mr. Brantley asked you about Jerry Thompson. And you said that you got to the scene and Jerry Thompson said Mike or Mick is dead and that’s all he said.
“A: Right.
“Q: Now, I know it’s been a long time. You made some handwritten notes on a Uniform Alabama Offense Report, correct? Didn’t you?
“A: Right.
“Q: Now, do you recall if there was anything else ever said by Jerry Thompson to you when you arrived on the scene?
“A: Well—
“Q: If you can.
“[Defense counsel]: Judge, this is going to be hearsay.
“[Prosecutor]: No, sir. this is in direct reference he said — he asked him what Jerry Thompson said. And he said ‘Mick’s dead.’
“[Defense counsel]: I didn’t ask him that.
“[Prosecutor]: Yes, he did, Judge.
“[Defense counsel]: I asked him did he take a statement.
“[Prosecutor]: Yes, sir.
“The Court: And that’s something that was in his statement. He said that Jerry Thompson said ‘Mick is dead.’
“[Prosecutor]: And Corporal Flowers said that’s all he said.
“The Court: Same character of evidence.
“[Prosecutor]: Correct. And this is directed only to that.
“The Court: Right. Same statement.
“Q: Now, the question is, Corporal Flowers, you were going to say — Corporal Flowers, I apologize for cutting you off. I believe you were going to say that he did, in fact, say more, is that correct.
“A: Yes.
“Q: Okay. Do you remember everything he said? I know it’s been awhile. I’m not trying to trick you.
*991 “A: When I got there, he was standing by the car. He said ‘Mike is dead. Mike is dead.’ I said, ‘Mike who?’ Then he said, ‘Michael McCree.’ I said, ‘Well, who shot him?’ And he said, ‘Dennis.’ I said, ‘Dennis who?’ He said, ‘Well, Dennis McGriff.’ He said, ‘Sara’s nephew.’ And I said, ‘What kind of vehicle they was in?’ And then he gave me a description, a green Nissan, and three people was in it. And that’s when I gave it over the air there was a green Nissan, two males and one female driving in the vehicle.”
(R. 836-38.)
This evidence was cumulative of other evidence presented through the testimony of several other witnesses, including McGriff s own statement to police.
“ ‘If the evidence in question is inadmissible hearsay as urged by the defense, its admission was, at most, harmless error. Rule 45, Ala.R.App.P. “[TJestimony that may be inadmissible may be rendered harmless by prior or subsequent lawful testimony to the same effect or from which the same facts can be inferred.” White v. State, 650 So.2d 538, 541 (Ala.Cr.App.1994).... “The erroneous admission of evidence that is merely cumulative is harmless error.” Dawson v. State, 675 So.2d 897, 900 (Ala.Cr.App.1995).’ ”
Broadnax, 825 So.2d at 181, quoting Flynn v. State, 745 So.2d 295, 307 (Ala.Crim.App.), cert. denied, 745 So.2d 309 (Ala.1999).
Moreover, the only disputed issue was whether McGriff intended to kill McCree. Nothing in Flowers’s testimony sheds light on this issue. Thus, any possible error that may have occurred here as a result of the admission of this testimony was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
C.
McGriff also argues that the trial court erred in allowing Officer Forehand to be questioned about whether McGriff was going in the direction of the police station when he was arrested. The following occurred:
“Q [Prosecutor]: Mr. Blumenfeld asked you if you asked them if they were going to the police station. Are you aware that Dennis McGriff gave a statement to investigator Valenza and Richard St. John? Yes or no.
“A: Yes, sir.
“Q: And are you aware that Yetta Hayes, the driver, also gave a statement to St. John and Valenza?
“A: Yes, sir.
“Q: And can you tell the ladies and gentlemen of the jury, have you looked at those statements?
“A: I have scanned over them.
“Q: Did you ever see at one time they said they were going to the Police Department, either one of them, Hayes or McGriff? It’s not in there, is it?
“A: I never read that, sir.
“[Prosecutor]: That’s all.
“Q [Defense counsel]: Do you remember that being asked?
“A: That question?
“Q: Yes, sir.
“A: No, sir.
“Q: Do you remember whether you— you said you did not. Do you know if you or any other law enforcement officer in connection with this case ever asked Dennis McGriff that question?
“A: I’m not familiar with that question ever being asked.”
(R. 556-57.)
There was no objection to the above testimony; thus, we are limited to deter *992 mining whether there was plain error. Rule 45A, Ala.R.App.P.
Defense counsel cured any possible error by rehabilitating this witness’s testimony as to this issue. Though this witness had testified that McGriff did not tell police that he was on his way to the police station, the witness also testified that McGriff had never been asked that question. Any conceivable error here was rendered harmless by the actions of the defense counsel. Chapman v. California.
Moreover, the facts of the case do not lend credence to the assertion that McGriff was on his way to the police station when he was arrested. Here, three witnesses testified that the car McGriff was riding in passed by the hospital and that Officer Forehand pursued the vehicle. There is absolutely no evidence that supports McGriffs claim that he was on his way to the police station when he was stopped.
XIII.
McGriff argues that the trial court failed to ensure that the entire transcript of his capital case be transcribed because of the following alleged omission in the record during the trial court’s instructions to the jury:
“The Court: Ladies and gentlemen, I am going to charge you as to the law that applies to this case now. And I am going to begin by reading the indictment to you. The indictment reads:

“(Thereupon the indictment was read by the Court, after which the following proceedings were had.)

“The Court: That indictment charges Mr. McGriff with capital murder. And I will instruct you as to the exact elements of that charge in a few moments along with two other lesser included charges in this case.”
(R. 943) (emphasis added.) McGriff states the following in this brief, “In failing to ensure that this portion of the trial court’s address to the jury was transcribed, the trial court deprived this Court of the ability to review this portion of the trial court’s charge.” (McGriffs brief to this Court at page 123.) We find McGriffs argument absurd.
Initially, we note that McGriff never pointed out any deficiencies in the record based on the issue he now raises on appeal. A motion to supplement was filed with the trial court; however, the motion concerned the presentence investigation report, the probation officer’s report prepared for the youthful offender hearing, and the arrest warrant. (Supp. R. 5-6.) No mention was made of any alleged deficiency in the transcription of the court’s charge to the jury. It is the appellant’s duty to point out deficiencies in the record within the time allowed by the Rules of Appellate Procedure. Rule 10(g), Ala. R.App.P. Thus, our review is limited to determining whether plain error occurred. Rule 45A, AIa.R.App.P.
The indictment is made a part of the record on appeal and reads as follows:
“The grand jury of said county charge that, before the finding of the indictment, Dennis Demetrius McGriff, whose name is otherwise unknown to the Grand Jury; did intentionally cause the death of Michael McCree by means of a deadly weapon, to-wit: .44 caliber revolver, while the said Dennis Demetrius McGriff fired said weapon from within a motor vehicle, in violation of § 13A-5-40(18),[5] the Code of Alabama, against *993 the peace and dignity of the State of Alabama.”
(C.R. 5.)
Also, the trial court’s instructions to the jury reflect that the jury was instructed on the elements of capital murder as defined in § 13A-5-40(a)(18), Ala.Code 1975, and as charged in the indictment. As this Court stated in Ingram v. State, 779 So.2d 1225, 1280 (Ala.Crim.App.1999):
“Appellate review of a defendant’s conviction for a capital offense and sentence of death is automatic. §§ 13A-5-54 and -55. The standard for review in death penalty cases is stricter than that in other criminal cases. Harris v. State, 552 So.2d 857 (Ala.Crim.App.1987). Our review in death penalty cases is governed by the plain-error doctrine, which imposes on us the duty to examine the entire record to determine whether any error prejudicial to Ingram exists. Rule 45A, Ala.R.App.P. Because of the statutory requirement of an automatic appeal in death penalty cases, the requirement that we search the record for plain error in such cases, the right to appeal, and because of an appellant’s indigency, the state must afford such an appellant a record of sufficient completeness to permit review for plain error and to permit proper consideration of claims presented on appeal. Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Harris v. State; Hammond v. State, 665 So.2d 968 (Ala.Crim.App.1994).”
The failure of the court reporter to transcribe the reading of the indictment to the jury does not prevent this Court from reviewing McGriff s record for plain error. There has been no allegation that McGriff was prejudiced by the failure to transcribe the reading of the indictment. The record reflects that the indictment was read to the jury. There is no allegation that the actual indictment was not read to the jury. And the record is not missing a substantial and significant portion that renders this Court’s review impossible. See Ingram. Any failure to transcribe the reading of the indictment was inconsequential to appellate review of this case.
XIV.
McGriff argues that Alabama’s statute that limits the compensation for attorneys appointed on capital cases to $1,000 for out-of-court work, based on a hourly rate of $20 per hour (§ 15-12-21), violates the separation-of-powers doctrine, constitutes a taking without just compensation, deprives an indigent capital defendant of effective assistance of counsel, and violates the Equal Protection Clause. As this Court has stated:
“These claims have repeatedly been rejected. See Ex parte Smith, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); May v. State, 672 So.2d 1310 (Ala.1995); Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985); Smith v. State, 581 So.2d 497 (Ala.Cr.App.1990), rev’d on other grounds, 581 So.2d 531 (Ala.1991), on remand, 581 So.2d 536 (Ala.Cr.App.1991), after remand, 698 So.2d 189 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997).
*994 “ ‘It should be noted that the Alabama Legislature recently passed the “Investment in Justice Act of 1999,” and, in pertinent part, that Act amended § 15-12-21. Under the new Act, the rate of compensation for attorneys representing indigent criminal defendants is increased to $50 per hour for in-court time and $30 per hour for out-of-court time, with no limit on compensation for an attorney in a case involving a capital offense. Moreover, effective October 1, 2000, the hourly rate increases to $40 per hour for out-of-court time and $60 per hour for in-court time.’
“McWhorter v. State, 781 So.2d 257, 306 (Ala.Crim.App.1999).”
Smith v. State, 795 So.2d 788, 832-33 (Ala.Crim.App.2000).
XV.
McGriff argues that the prosecutor improperly introduced victim impact evidence into the guilt phase by questioning the victim’s wife in order to show the jury that the victim was married and that he had a 15-month-old child at the time of his death.
There was no objection to the information elicited from the victim’s wife. Thus, we review this issue for plain error. Rule 45A, Ala.R.App.P.
The victim’s wife was called to testify concerning the victim’s movements on the day of his murder. Testimony was also elicited that McCree was married and that he had a 15-month-old son. Though the evidence relating to the fact that McCree was married and had a young child served no purpose at the guilt stage of trial, we do not believe that its introduction constituted reversible error. We base this holding on the Alabama Supreme Court’s holding in Ex parte Rieber, 663 So.2d 999, 1006 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995). The Rieber Court stated:
“We caution prosecutors that the introduction of victim impact evidence during the guilt phase of a capital murder trial can result in reversible error if the record indicates that it probably distracted the jury and kept it from performing its duty of determining the guilt or innocence of the defendant based on the admissible evidence and the applicable law. However, after examining the record in its entirety, we conclude that the aforementioned portions of [the victim’s husband’s] testimony, although they should not have been permitted, did not operate to deny Rieber a fair trial. It is presumed that jurors do not leave their common sense at the courthouse door. It would elevate form over substance for us to hold, based on the record before us, that Rieber did not receive a fair trial simply because the jurors were told what they probably had already suspected' — -that Ms. Craig was not a ‘human island,’ but a unique individual whose murder had inevitably had a profound impact on her children, spouse, parents, friends, or dependents (paraphrasing a portion of Justice Souter’s opinion concurring in the judgment in Payne v. Tennessee, 501 U.S. 808, 838, 111 S.Ct. 2597, 2615, 115 L.Ed.2d 720 (1991)).”
Here, no objection to the questions was made and the witness’s entire testimony encompassed only a brief portion, two pages, of the total transcript of the trial. We are confident that the information elicited from the victim’s wife did not amount to plain error. Rieber.
XVI.
McGriff also argues that it was reversible error for the trial court to ask the victim’s brother, Jeffery McCree, what the victim looked like after he was shot *995 and what sounds he was making. The following occurred:
“Q [Prosecutor]: When you got out of the vehicle and went to your brother, Michael, what position was he in?
“A [McCree]: He was bleeding bad.
“Q: Was he standing up or sitting up? “A: He was lying down.
“Q: Faceup or facing the dirt?
“A: He was faceup.
“Q: Would you tell the ladies and gentlemen of the jury how much blood you saw on your brother?
“A: It was a lot.
“Q: And did your brother make a sound, say a word in any manner or fashion?
“A: No, sir. He was just trying to breathe.
“Q: Tell us about those sounds. What did you hear?
“A: It was just (Demonstrating).
“Q: Were his eyes open or closed?
“A: They were like he was trying to keep them open. And he was just like he was going to pass out or something.”
(R. 469-70.)
There was no objection to the above-referenced testimony; thus we are limited to determining whether plain error occurred here. Rule 45A, Ala.R.App.P. Moreover, the failure to object weighs against McCree’s claim of prejudice. Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
This testimony was relevant and admissible. The victim was transported from the scene of the shooting to the hospital. The jury did not have the aid of crime-scene photographs to establish the circumstances surrounding the shooting and McCree’s death. The prosecutor was ensuring that the jury was acquainted with the circumstances surrounding the murder. This was relevant and material evidence in the guilt phase of McGriff s capital trial. Rule 401, Ala.R.Evid.
Moreover, even if the admission of the above testimony was erroneous, we are confident that its admission did not affect the substantial rights of the appellant. Any error in its admission was harmless. Rule 45A, Ala.R.App.P.
XVII.
McGriff argues that there was insufficient evidence to prove his guilt because the state failed to prove that he intended to kill McCree.
There was more than sufficient evidence for the jury to conclude that McGriff intended to kill McCree. Jones testified that after the shots were fired McGriff yelled, “I told you I would get you.” McGriff also told an officer that he had shot McCree but that he would not lose any sleep over it. Also, McGriff fired a handgun into a crowd of people, killing one of a group of individuals who, he said, had been involved in the car chase earlier that day. Certainly, the evidence supported the conclusion that McGriff intended to kill when he fired the fatal shots.
As this Court stated in Daniels v. State, 762 So.2d 864, 865-66 (Ala.Crim.App.1999):
“ ‘The question of a defendant’s intent at the time of the commission of the crime is usually an issue for the jury to resolve.’ Rowell v. State, 570 So.2d 848, 850, citing Crowe v. State, 435 So.2d 1371, 1379 (Ala.Cr.App.1983). Intent to kill may be inferred from the use of a deadly weapon. See Long v. State, 668 So.2d 56, 60 (Ala.Cr.App.1995); Buskey v. State, 650 So.2d 605, 609 (Ala.Cr.App.1994). Intent is rarely shown by direct proof, and may be inferred from the *996 surrounding circumstances of the case. Paige v. State, 494 So.2d 795, 796 (Ala.Cr.App.1986). ‘[CJircumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused.’ Stephens v. State, 580 So.2d 11, 24 (Ala.Cr.App.1990), aff'd, 580 So.2d 26 (Ala.), cert. denied, 502 U.S. 859, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991). In Bishop v. State, 482 So.2d 1322 (Ala.Cr.App.1985), this Court stated,
“ ‘ “The intention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another.” ’
“482 So.2d at 1326, quoting Underhill on Criminal Evidence, § 540 (3d ed.1923).”
Here, there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that McGriff s actions evidenced his intent to kill McCree.
McGriff also argues that the State failed to prove that the killing was not provoked. We will discuss this argument in Part XIX of this opinion.
XVIII.
McGriff argues that numerous instances of prosecutorial misconduct in the guilt phase of his trial resulted in his being denied a fair and impartial trial. This Court has stated the following standard for reviewing claims of prosecutorial misconduct:
“The standard for reviewing a prosecutor’s argument is whether the argument ‘so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). ‘ “This court has concluded that the failure to object to improper prosecuto-rial arguments, [as is the case here,] ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.” ’ Kuenzel v. State, 577 So.2d 474, 489 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), quoting Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987).
“Furthermore:
“ ‘In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App.1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App.1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App.1980), cert. denied, 404 So.2d 100 (Ala.1981). Moreover, this court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the for *997 mation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App.1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App.1982).’
“Hutcherson v. State, 727 So.2d 846, 854-55 (Ala.Cr.App.1997), aff'd, 727 So.2d 861 (Ala.1998), cert. denied, 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999), quoting Bankhead v. State, 585 So.2d 97, 106 (Ala.Cr.App.1989), aff'd in pertinent part, remanded on other grounds, 585 So.2d 112, 127 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Cr.App.1992), rev’d on other grounds, 625 So.2d 1146 (Ala.1993).”
Jackson v. State, 791 So.2d 979, 1012-13 (Ala.Crim.App.2000). We have also stated:
“ ‘It is well settled that both the prosecutor and defense counsel have the right to present their impressions from the evidence. E.g., Cross v. State, 536 So.2d 155, 160 (Ala.Cr.App.1988); Sanders v. State, 423 So.2d 348, 351-52 (Ala.Cr.App.1982). In closing, counsel “may examine, collate, sift, and treat the evidence in his own way” and “may argue every matter of legitimate inference from the evidence.” Watson v. State, 398 So.2d 320, 328 (Ala.Cr.App.1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).’ ”
Taylor v. State, 808 So.2d 1148, 1188 (Ala.Crim.App.2000), quoting Kitsos v. State, 574 So.2d 979, 983 (Ala.Crim.App.1990). Last, “[C]laims of prosecutorial misconduct are subject to a harmless error analysis. Smith v. State, 698 So.2d 189, 203 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997); Bush v. State, 695 So.2d 70, 131 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.1997).” Bryant v. State, 727 So.2d 870, 876 (Ala.Crim.App.1998).
A.
McGriff argues that the prosecutor improperly commented on the failure of the defense to call a witness. The following occurred in rebuttal to defense counsel’s closing argument at the guilt phase of the proceedings:
“Remember what they said about Jerry Thompson? They made a — they argued or summed up, whatever Mr. Sheffield said about he was a witness or something.
“They didn’t call Jerry Thompson to the stand, did they? They sure didn’t. But they want to attack through an innuendo argument to you about Jerry Thompson. They sure didn’t call him to the witness stand in any manner or fashion.”
(R. 933-34.)
We note that no objection was made to this argument; thus, our review is limited to determining whether there was plain error. Rule 45A, Ala.R.App.P.
“Although such a failure does not prevent our review, ‘the failure to object should be weighed as part of our evaluation of the comments, because the failure to object may suggest that the defense did not consider the comments to be particularly harmful. Ex parte Kennedy, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).’ Ex parte Payne, 683 So.2d 458, 465 (Ala.1996), cert. denied, 520 U.S. 1146, 117 S.Ct. 1319, 137 L.Ed.2d 481 (1997).”
Thomas v. State, 824 So.2d 1, 23-24 (Ala.Crim.App.1999).
Before to the above comment defense counsel made the following argument:
“Remember what Officer Flowers said when he was pressed by the State on *998 the witness stand about what Thompson had said.
“What did Thompson say? Thompson said he shot toward the car, shot in the air and shot toward the car, exactly what he told the police within a short time thereafter.
“Now, Thompson is not his friend. So why would Thompson say something like that? Because that’s the truth. That’s what happened. He shot toward the car. He did something very, very reckless, inexcusable, that’s outrageous. But it’s not intentional murder to be a capital offense. Thompson corroborates that. That’s important.”
(R. 906-07.)
“‘Reference to a particular witness’s failure to testify is improper if the witness is equally available to both parties.’ Pacifico v. Jackson, 562 So.2d 174, 177 (Ala.1990); accord Helton v. State, 433 So.2d 1186, 1189 (Ala.Cr.App.1983); Daniels v. State, 650 So.2d 544, 560 (Ala.Cr.App.1994), cert. denied, 514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995).” Griffin v. State, 790 So.2d 267, 327 (Ala.Crim.App.1999). However, the State asserts that the above remarks were a reply-in-kind to the above-referenced comments made by defense counsel. We agree. A similar argument was made in Weaver v. State, 678 So.2d 260 (Ala.Crim.App.1995), rev’d on other grounds, 678 So.2d 284 (Ala.), on remand, 678 So.2d 292 (Ala.Crim.App.1996). In Weaver, we refused to conclude that the comment constituted reversible error, and stated:
“While it is true that ‘ “one party may not comment unfavorably on the other party’s failure to produce a witness supposedly favorable to that party if witness is equally available to both sides.” Hunt v. State, supra, [453 So.2d 1083] at 1087 [(Ala.Cr.App.1984)],’ Stubbs v. State, 522 So.2d 317 (Ala.Crim.App. 1987), the prosecutor’s comments were a reply in kind to defense counsel’s closing argument concerning what two defense witnesses stated to these police officers and what these officers told them. (R. 850-58, 872-74.)
“ ‘Therefore, the district attorney’s remarks were a reply in kind to the argument of defense counsel, and therefore do not violate the general rule that a party may not comment unfavorably on the other party’s failure to call a witness equally available to both sides. See Stockard v. State, 391 So.2d 1049 (Ala.Crim.App.1979).’ ”
678 So.2d at 279, quoting Helton v. State, 433 So.2d 1186, 1189 (Ala.Crim.App.1983).
B.
McGriff also argues that the prosecutor misstated the law when he urged the jury to find the intent to kill from the fact that the weapon used was not automatic but had to be cocked each time it was fired. The following occurred:
“Did he do it, ladies and gentlemen? Mr. Sheffield said it wasn’t intentional. They are going to try to argue that to you, I submit to you.
“The only way this weapon is going to fire a second time is when this man’s brain told him you have got to take your hand with your fingers or your thumb— this had to be loaded. You have go to pull the hammer back again....
“Then it’s fired a second time. And then, once again, looking for intent, good people, what happens again? Not one time, not two times.
“But I asked Mr. Saloom. Mr. Sa-loom, tell these ladies and gentlemen your opinion as a firearms expert, as a human being, how would that weapon go off three times? Someone would have to take it and pull the hammer back and cock it, load it, squeeze the trigger. *999 Can’t go off by itself. One time, two times, three times. That’s the only way.
[[Image here]]
“He went straight down, laid on the ground. When the car then drove by— and remember, think about his intent, good people. Big, bad Dennis. T told you I was going to get y’all.’ And he did. He said it. He did it. He backed it up.”
(R. 886-90.)
There was no objection to the above argument. The failure to object weighs against McGriffs claim of prejudice. James v. State, 788 So.2d 185 (Ala.Crim.App.2000).
Clearly, the State’s argument did not imply that the fact that he had pulled the hammer back on the gun was all that was necessary to prove that McGriff intended to kill McCree. However, this action was circumstantial evidence tending to show McGriffs intent. As this Court stated in Bishop v. State, 482 So.2d 1322, 1326 (Ala.Crim.App.1985), concerning the State’s burden of establishing proof of intent:
“ ‘The intention to do great bodily harm, to murder or commit any other crime by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from the declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused, from his threats or prior conduct towards the person assaulted, and generally from the extent and effect of the injury inflicted, or from any deliberate action which is naturally attempted and usually results in danger to the life of another.’ ”
Quoting Underhill on Criminal Evidence, § 540 (3d ed.1923) (emphasis added).
Last, we observe that the trial court, on several occasions in its oral charge to the jury, instructed the jury that in order to prove capital murder the prosecution had to prove that McGriff had the specific intent to kill. (R. 948, 949, 953, 964, 1008.) We And no error here.
C.
McGriff argues that it was error for the prosecutor to make the following argument:
“So do. you believe there [were] any fire bombs? They are driving down a road taking a gas can trying to fill up bottles and throw it at people. No. That’s not what this is about.
“And you draw your own inferences what it was about. But how about one thousand, eleven hundred, twelve hundred dollars worth of cash? How about two hundred and something dollars cash on Dennis McGriff? When big, bad Dennis doesn’t have a job and doesn’t work, neither does Gabriel Knight or Yetta Hayes. Columbia, Webb, Dothan. What’s taking place? You know. Draw an inference from the evidence. Draw an inference from the evidence.”
(R. 894-95.)
Initially, we observe that no objection was made to this argument. Thus, we are limited to a plain-error analysis. Rule 45A, Ala.R.App.P.
McGriff contends that the above-referenced argument implied that he was engaged in illicit activity other than that charged in the indictment, that it encouraged the jurors to draw negative inferences about his guilt based on other people’s conduct, and that it encouraged the jurors to convict McGriff “for something *1000 other than the facts proven in this case.” (McGriff s brief to this Court at page 57.)
We do not agree. The comments of the prosecutor were legitimate inferences that could be drawn from the evidence presented at trial. A prosecutor is free to argue all legitimate inferences even if the inference implies that the accused has committed another offense not charged in the indictment. See Mason v. State, 768 So.2d 981 (Ala.Crim.App.1998). Officer Ashley Forehand of the Houston County Sheriffs Department testified that when McGriff, Knight, and Hayes were arrested they were in possession of a significant amount of money. Knight was in possession of approximately $1,700 and McGriff was in possession of $222. (R. 543.) Neither of them had a job. The prosecutor was arguing that the murder was not about firebombs but was about money.
Moreover, even if the remarks were not legitimate inferences that could be drawn from the evidence, the remarks did not so infect the trial with unfairness that McGriff was denied a fair and impartial trial. See Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).
D.
McGriff argues that the prosecutor injected penalty-phase issues into the guilt phase of the trial when he argued the following, “Speak loudly, speak truthfully, speak justice in this case and run the sword of justice right through that Defendant’s guilty little heart because he committed capital murder in this community in a rural small place called Ashford.” (R. 942-43.)
No objection was made to this comment; thus, we are confined to a plain error analysis. Rule 45A, Ala.R.App.P. “Under the plain-error rule, the absence of an apt objection weighs against any claim of prejudice. Ex parte Kennedy, 472 So.2d 1106 (Ala.1985), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985).” Ex parte Smith, 756 So.2d 957, 961 (Ala.2000), petition for cert. denied, 531 U.S. 830, 121 S.Ct. 82, 148 L.Ed.2d 44 (2000).
“Punishment is ‘an improper consideration at the guilt phase of [a capital] trial.’ Berard v. State, 486 So.2d 476, 479 (Ala.1985)[, on remand, 486 So.2d 482 (Ala.Crim.App.1986)].” McNair v. State, 653 So.2d 320, 338 (Ala.Crim.App.1992), aff'd, 653 So.2d 353 (Ala.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995). However, we agree with the State that the prosecutor was using a metaphor; he was not literally asking the jury to sentence McGriff to death. The comment is more akin to an appeal for law enforcement, which we have repeatedly upheld as proper argument. See McWilliams v. State, 640 So.2d 982, 1001 (Ala.Crim.App.1991), aff'd in pertinent part, 640 So.2d 1015 (Ala.1993), on remand, 640 So.2d 1025 (Ala.Crim.App.), after remand, 666 So.2d 89 (Ala.Crim.App.1994), aff'd, 666 So.2d 90 (Ala.1995), cert. denied, 516 U.S. 1053, 116 S.Ct. 723, 133 L.Ed.2d 675 (1996).
E.
McGriff argues that the prosecutor committed misconduct when, on three occasions, he called McGriff a coward.
As this Court recently stated in Smith v. State, 795 So.2d 788, 825-26 (Ala.Crim.App.2000):
“This Court in Barbee v. State, 395 So.2d 1128, 1134 (Ala.Cr.App.1981), noted:
“ ‘The digest abounds with instances where the prosecutor has commented on the defendant’s character or appearance. Hall v. United States, *1001 419 F.2d 582 (5th Cir.1969) (“hoodlum”); Wright v. State, 279 Ala. 543, 188 So.2d 272 (1966) (“Judas”); Rogers v. State, 275 Ala. 588, 157 So.2d 13 (1963) (“a slick and slimy crow”); Watson v. State, 266 Ala. 41, 93 So.2d 750 (1957) (“a maniac”); Weaver v. State, 142 Ala. 33, 39 So. 341 (1905) (“beast”); Liner v. State, 350 So.2d 760 (Ala.Cr.App.1977) (“a rattlesnake” and “a viper”); Jones v. State, 348 So.2d 1116 (Ala.Cr.App.), cert. denied, Ex parte Jones, 348 So.2d 1120 (Ala.1977) (“a purveyor of drugs”); Kirkland v. State, 340 So.2d 1139 (Ala.Cr.App.), cert. denied, Ex parte Kirkland, 340 So.2d 1140 (Ala.1977) (“slippery”); Jeter v. State, 339 So.2d 91 (Ala.Cr.App.), cert. denied, 339 So.2d 95 (Ala.1976), cert. denied, 430 U.S. 973, 97 S.Ct. 1661, 52 L.Ed.2d 366 (1977)(“a flim flam artist”); Cassady v. State, 51 Ala.App. 544, 287 So.2d 254 (1973) (“a demon”); Reed v. State, 32 Ala.App. 338, 27 So.2d 22, cert. denied, 248 Ala. 196, 27 So.2d 25 (1946) (“lied like a dog running on hot sand”); Williams v. State, 22 Ala.App. 489, 117 So. 281 (1928) (“a chicken thief’); Ferguson v. State, 21 Ala.App. 519, 109 So. 764 (1926) (“a smart aleck”); Quinn v. State, 21 Ala.App. 459, 109 So. 368 (1926) (“a wild cat-ter”); Thomas v. State, 19 Ala.App. 187, 96 So. 182, cert. denied, Ex parte Thomas, 209 Ala. 289, 96 So. 184 (1923) (“a moral pervert”); Beard v. State, 19 Ala.App. 102, 95 So. 333 (1923) (“seducer”).’
“References in closing argument to a defendant’s character will not constitute reversible error if they are supported by the record. Nicks v. State, 521 So.2d 1018, 1023 (Ala.Cr.App.1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). See Schartau v. State, 534 So.2d 378 (Ala.Cr.App.1988) (reference to appellant as thief did not amount to reversible error); Jackson v. State, 249 Ala. 348, 31 So.2d 519 (1947) (reference to appellant as ‘damned thief did not amount to reversible error).”
Certainly, McGriffs actions in this case could be said to be cowardly. McGriff did not confront McCree with the events that he alleged had occurred earlier in the day; instead he drove by a highly congested area and fired his gun from a moving car. The prosecutor’s comment on McGriffs character was supported by McGriffs conduct — conduct that McGriff admitted to at trial.
F.
McGriff also makes several other allegations of prosecutorial misconduct in his closing argument in the guilt phase because, he says, the prosecutor argued facts that were not in evidence.
We have thoroughly reviewed the challenged portions of the prosecutor’s closing argument. We conclude that the comments were either inadvertent slips of the tongue that did not contribute to the jury’s verdict or were legitimate inferences that could be drawn from the evidence. In no instance did any prosecutorial argument so infect the trial with unfairness that McGriff was denied a fair and impartial trial. Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).
G.
McGriff argues that the cumulative effect of the alleged deficiencies amounted to reversible error. He cites Ex parte Tomlin, 540 So.2d 668 (Ala.1988), on remand, 540 So.2d 674 (Ala.Crim.App.1989), in support of this contention. We recently addressed a similar issue and stated:
*1002 “Minor correctly notes that the Alabama Supreme Court has held that the cumulative effect of [prosecutorial misconduct] may warrant reversal when the individual errors alone would not. See Ex parte Tomlin, 540 So.2d 668 (Ala.1988). However, unlike Tomlin, in which the Supreme Court found several errors, we find no instances of prosecu-torial misconduct that mandate reversal. ‘ “Because we find no error in the specific instances alleged by the appellant, we find no cumulative error.” ’ Lane v. State, 673 So.2d 825 (Ala.Cr.App.1995).... Therefore Minor’s claim alleging cumulative error is without merit.”
Minor v. State, 780 So.2d 707, 786 (Ala.Crim.App.1999).
XIX.
McGriff argues that the trial court committed reversible error in many instances during its guilt-phase instructions to the jury.
We apply the following principles of law when reviewing challenged instructions to the jury:
“A trial court has broad discretion when formulating its jury instructions. See Williams v. State, 611 So.2d 1119, 1123 (Ala.Cr.App.1992). When reviewing a trial court’s instructions, ‘ “the court’s charge must be taken as a whole, and the portions challenged are not to be isolated therefrom or taken out of context, but rather considered together.” ’ Self v. State, 620 So.2d 110, 113 (Ala.Cr.App.1992) (quoting Porter v. State, 520 So.2d 235, 237 (Ala.Cr.App.1987)); see also Beard v. State, 612 So.2d 1335 (Ala.Cr.App.1992); Alexander v. State, 601 So.2d 1130 (Ala.Cr.App.1992).”
Williams v. State, 795 So.2d 753, 780 (Ala.Crim.App.1999). See also Broadnax v. State, 825 So.2d 134 (Ala.Crim.App.2000); Maples v. State, 758 So.2d 1 (Ala.Crim.App.), aff'd, 758 So.2d 81 (Ala.1999), petition for cert. denied, 121 U.S. 83, 121 S.Ct. 83, 148 L.Ed.2d 45. The harmless-error analysis applies to the giving of an erroneous jury instruction in the guilt phase of a capital trial. Jackson v. State, 674 So.2d 1318, 1325-26 (Ala.Crim.App.1993), aff'd in relevant part, 674 So.2d 1365 (Ala.1994), on remand, 674 So.2d 1370 (Ala.Crim.App.1995).
A.
McGriff first attacks, on several grounds, the trial court’s instruction on heat-of-passion provocation. He argues that the instructions were erroneous because, he says, the instructions incorrectly implied to the jury that it must first consider capital murder before it could consider whether the defense of heat-of-passion provocation lowered the offense to manslaughter.
Initially, we observe that there was no objection at trial to the issues now raised on appeal; thus, we are confined to determining whether plain error occurred. Rule 45A, Ala.R.App.P.
Most importantly, the facts of the case do not support the giving of an instruction on heat-of-passion provocation. Here, a defense witness stated that five hours had elapsed from the time that McGriff was involved in a car chase with MeCree, Walker, and Thompson, and the time that MeCree was murdered. This Court has stated:
“Anyone charged with a greater offense has the right to have a charge on any lesser offenses when there is a reasonable theory based upon the evidence to support the accused’s position. Anderson v. State, 507 So.2d 580, 582 (Ala.Cr.App.1987). The trial court may refuse to charge on such a lesser includ *1003 ed offense only when: (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense; or (2) the charge would tend to mislead or confuse the jury. Holladay v. State, 549 So.2d 122 (Ala.Cr.App.1988). The sole issue in this appeal is whether there is a reasonable theory based upon the evidence to support the theory that the appellant killed Stephens out of heat of passion caused by provocation recognized by law.
“Section 13A-6-3, Code of Alabama 1975, specifies that, in order to reduce murder to manslaughter, the heat of passion must have been caused by a provocation recognized by law. Alabama courts have acknowledged such legal provocation in only two circumstances: (1) when the accused catches his/her spouse in the act of adultery; and (2) when the accused has been assaulted or was faced with what appeared to be an imminent assault. Hill v. State, 699 So.2d 974 (Ala.Cr.App.1997).”
Turner v. State, 708 So.2d 232, 234 (Ala.Crim.App.1997).
Alabama does not have many opinions interpreting the term “reasonable time for the passion to cool and for reason to reassert itself,” so we have looked to other states for guidance. The Kansas Supreme Court has stated the following:
“In State v. Yarborough, 39 Kan. 581, 18 P. 474 (1888), Yarborough was convicted of the first-degree murder of L.D. Collier, with whom he worked on the railroad. Although friends, the two exchanged angry words when Collier thought Yarborough had neglected his work responsibilities. ‘Yarborough answered with a vulgar remark, and Collier struck Yarborough three times, the last time knocking him senseless; after being knocked down, Yarborough had a bruise over his left eye and was bleeding at the nose.’ 39 Kan. at 583, 18 P. 474. After Yarborough got up and washed his face, he struck Collier, and the two ‘clinched, but parties interfered and separated them.’ 39 Kan. at 584, 18 P. 474. Several hours later, after eating supper and borrowing a revolver, Yarborough went to Collier’s rooming house and shot him. In considering whether the jury should have been instructed on the lesser offense of voluntary manslaughter, the court stated:
“ ‘The law carefully distinguishes between a sudden transport of passion, which springs instantaneously from what it allows as a sufficient provocation, and which prompts to an immediate act of violence, and a purpose of revenge, which usually follows such passion. In the first case, in condescension to the frailty of our nature the law allows the provocation to extenuate a homicide committed at the instant, from murder to manslaughter. In the other, the provocation furnishing an incentive to revenge, so far from extenuating the crime, is a circumstance to be looked to as evidence of malice; and especially would this be so if the prisoner, in consequence of the provocation, had made threats against the life of the deceased. (Felix v. The State, 18 Ala. 720. See also 2 Bishop on Crim. Law, 718.)’ 39 Kan. at 590, 18 P. 474.
“In other words, malice and heat of passion are incompatible, and it is the absence of malice which distinguishes voluntary manslaughter from murder. With the passing of time after provocation, passion cools and gives way to reason and mastery over one’s passion. An act of violence separated from the provocation by sufficient cooling time is the *1004 product of malice and cold calculation rather than the heat of passion.
“In Yarborough, the court considered whether determining if a reasonable time had elapsed for the passions to cool and reason to resume its control was a matter of fact or law. 39 Kan. at 589,18 P. 474. Bishop’s treatise on criminal law was quoted to the effect that reasonable cooling time was to be that of an ordinary man in like circumstances, and that ‘ “an hour seems to have been deemed to be sufficient.” ’ 39 Kan. at 589, 18 P. 474 (quoting 2 Bishop on Criminal Law 712). The court concluded that there was no error in the trial court’s refusing to instruct the jury on manslaughter.”
State v. Follin, 263 Kan. 28, 37-38, 947 P.2d 8, 15-16 (1997). The court in Follin ultimately held that the passage of 10 hours from the time of the recognized provocation until the time of the murder was sufficient for “passions to cool and reason to resume its control” and that the accused was not entitled to an instruction on voluntary manslaughter.
An accused is entitled to an instruction on a lesser included offense only when there is a reasonable theory from the evidence to support such an instruction. We refuse to find plain error in an alleged erroneous jury instruction when the accused had no legal right to have the instruction given to the jury. Because the evidence reflects that heat-of-passion provocation was not established, as a matter of law, any conceivable error in a jury instruction on this legal principle was harmless beyond a reasonable doubt and resulted in no prejudice to McGriff. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Moreover, the trial court’s jury instructions did not imply that the jury had to acquit McGriff of capital murder before it could consider his claim of provocation. The record clearly reflects that the trial court went out of its way to ensure the correctness of its jury instructions. On two separate occasions the court reinstructed the jury after speaking with the prosecution and defense counsel. The trial court also reinstructed the jury when the foreman returned with a request that the jury be reinstructed on the elements of capital murder, murder, and manslaughter. (R. 996.) The trial court also asked the jurors if they wanted to be reinstructed on heat of passion; the foreman answered that no juror had requested that instruction. At this time the court reinstructed the jury as follows:
“The Court: Do you want to hear about heat of passion? Because if the heat of passion and legal provocation circumstance is found, then that would reduce or allow you to find him guilty of manslaughter instead of either of the two above [he had earlier instructed on capital murder and murder]. You can also find him guilty of manslaughter if you find a reckless murder, also.”
(R. 998-99.) Even if McGriff was entitled to an instruction on heat-of-passion provocation the trial court’s instructions were accurate, they did not shift the burden of proof as to heat-of-passion provocation, and they did not result in prejudice to McGriff.
Also, the trial court’s instruction on heat-of-passion provocation did state, contrary to McGriff s assertion, that a person could be guilty of provoked manslaughter even if the person who provoked him was not the ultimate victim. The record shows that defense counsel objected to this instruction and that the trial court, not once but twice, reinstructed the jury on this concept. (R. 973-78.)
*1005 Last, we observe that the claim of heat-of-passion provocation was inconsistent with McGriffs defense at trial that he did not intend to kill McCree but rather that he was aiming at the car. Heat-of-passion provocation implies that McGriffs actions were intentional but that, because of the circumstances, they were excused by law. These two defenses are inconsistent. McGriff had the benefit of both instructions. The jury returned a verdict of guilty of capital murder. This verdict was more than supported by the evidence presented at trial.
B.
McGriff argues that the trial court’s instructions on the elements of capital murder were ambiguous and that they failed to specify that to be convicted of capital murder the murder must be intentional. We find this argument to be totally unsupported by the record.
After the jury returned with a question about the elements of capital murder, murder, and manslaughter, the trial court reinstructed the jury on these elements. After the reinstruction defense counsel stated that he thought that the jury was confused and that it should be reinstructed on the intent necessary for capital murder. Out of an abundance of caution the trial court once again reinstructed the jury on this concept. Defense counsel objected a third time and the following occurred:
“The Court: We have told them it has to have intent about 10 different ways. So, if they haven’t figured that out yet, they won’t ever.
“Mr. Brantley: All right.
“The Court: Because I have harped over and over and over about there had to be the intent to kill. In fact, my words were to kill at least someone.
“Mr. Brantley: Right.
“The Court: I have said that at least five times to them.”
(R. 1011.)
We find McGriffs argument to be a gross mischaracterization of the court’s instructions. A review of the trial court’s instructions on intent show that the instructions were thorough, that they were repeated at least six times during the jury charge, and that they were accurate statements of the law. The trial court did not err in its jury instructions on intent.

Penalty-Phase Issues

XX.
In reviewing the record in the penalty phase of McGriffs trial, this Court noticed that the trial court’s sentencing order fails to comply with § 13A-5-47(d), Ala.Code 1975. This section states:
“(d) Based upon the evidence presented at trial, the evidence presented during the sentence hearing, and the pre-sentence investigation report and any evidence submitted in connection with it, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in Section 13A-5^49, each mitigating circumstance enumerated in Section 13A-5-51, and any additional mitigating circumstances offered pursuant to Section 13A-5-52. The trial court shall also enter written findings of fact summarizing the crime and the defendant’s participation in it.”
A review of the sentencing order reflects that the trial court did not enter specific written findings as to the existence or nonexistence of each aggravating circumstance contained in § 13A-5-49. Neither did the trial court enter specific written findings concerning the existence or nonexistence of the mitigating circumstance set out in § 13A-5-51(l) — that “the defendant has no significant history of prior criminal activity.”
*1006 We must therefore remand this ease so that the trial court can correct this deficiency in its sentencing order. See Hagood v. State, 777 So.2d 221 (Ala.Crim. App.2000); Griffin v. State, 790 So.2d 267 (Ala.Crim.App.1999); Borden v. State, 769 So.2d 935 (Ala.Crim.App.1997); Nelson v. State, 681 So.2d 252 (Ala.Crim.App.1995), after remand, 681 So.2d 257 (Ala.Crim.App.), aff'd, 681 So.2d 260 (Ala.1996); McNair v. State, 653 So.2d 343 (Ala.Crim.App.1993), aff'd, 653 So.2d 353 (Ala.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995).
We also observe that the pre-sentence report reflects that McGriff had been convicted for one offense' — possession of a forged instrument in the second degree. Though the record reflects that McGriff had been charged with five different offenses — McGriff had only one conviction. “[O]nly convictions can negate the statutory mitigating circumstance of no significant prior criminal record. § 13A-5-51, Ala.Code 1975; Freeman v. State, 651 So.2d 576, 597-98 (Ala.Cr.App.1994)[, after remand, 776 So.2d 160 (Ala.Crim.App.1999), aff'd, 776 So.2d 203 (Ala.2000)].” Ex parte Burgess, 811 So.2d 617 (Ala.2000). The presentence report also reflects that McGriff told the parole officer that he had two juvenile adjudications— one for shoplifting and one for stealing a vehicle. This evidence was also introduced during the cross-examination of McGriffs mother in the penalty phase of trial. We have held that juvenile adjudications cannot be used to negate the mitigating circumstance of “no significant history of pri- or criminal activity.” See Freeman v. State, 555 So.2d 196, 212 (Ala.Crim.App.1988), aff'd, 555 So.2d 215 (Ala.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2604, 110 L.Ed.2d 284 (1990). We cite the trial court to the recent holding in Ex parte Burgess, 811 So.2d 617 (Ala.2000). In Burgess, the Supreme Court stated:
“We agree with the Court of Criminal Appeals’ conclusion that a trial court may consider a defendant’s juvenile adjudications to be a relevant consideration in deciding what weight to assign to the statutory mitigating circumstances of a defendant’s lack of a significant prior criminal history and a defendant’s age at the time of the offense. Other courts considering this dilemma have come to the same conclusion as did the Court of Criminal Appeals. See, e.g., United States v. Pretlow, 770 F.Supp. 239, 243 (D.N.J.1991) (applying New Jersey Law); Scott v. Dugger, 686 F.Supp. 1488, 1508 (S.D.Ma.1988), aff'd, 891 F.2d 800 (11th Cir.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990) (applying Florida law); State v. Bays, 87 Ohio St.3d 15, 33-34, 716 N.E.2d 1126, 1145 (1999), cert. denied, 529 U.S. 1090, 120 S.Ct. 1727, 146 L.Ed.2d 647 (2000); State v. Rodriguez, 656 A.2d 262, 277-78 (Del.Super.Ct.1993). Nevertheless, Alabama law explicitly precludes a trial court from using juvenile adjudications to negate the mitigating circumstances of no significant history of prior criminal activity. Ex parte Davis, 718 So.2d 1166, 1178 (Ala.1998), cert. denied, 525 U.S. 1179, 119 S.Ct. 1117, 143 L.Ed.2d 112 (1999). In other words, during the sentencing process in a capital case, the trial court may use a defendant’s juvenile record to diminish the weight to be accorded the mitigating circumstance of that defendant’s lack of a significant history of prior criminal activity, as well as the mitigating circumstance of that defendant’s age at the time he or she committed the capital offense, but the trial court may not use the juvenile record as the basis for giving little or no *1007 weight to such mitigating circumstances.”
This case is remanded to the circuit court for that court to make written findings in compliance with § 13A-5-47(d), Ala.Code 1975. It is also necessary for the trial court to reweigh the aggravating and mitigating circumstances after'considering its findings concerning § 13-5-51(1). No evidentiary hearing is necessary. The written findings should be filed with this Court no later than 45 days from the date of this opinion. We pretermit discussion of the other issues concerning the penalty phase until the trial court has filed its return to remand with this Court.
AFFIRMED AS TO CONVICTION; REMANDED WITH DIRECTIONS AS TO SENTENCING.
McMILLAN, COBB, BASCHAB, and FRY, JJ., concur.

On Return to Remand

WISE, Judge.[1]
This case was originally assigned to another member of this Court. It was reassigned to Judge Wise on January 16, 2000.
The appellant, Dennis Demetrius McGriff, was convicted of capital murder and was sentenced to death by electrocution. This Court affirmed his conviction but remanded the case for the trial court to amend its sentencing order to comply
with § 13A-5-47(d), Ala.Code 1975. See McGriff v. State, 908 So.2d 961 (Ala.Crim.App.2000). The trial court has complied with our directions and has filed its amended sentencing order with this Court.
We now address the issues raised in the penalty phase of the proceedings.
I.
McGriff argues that the statute under which he was convicted, § 13A-5-40(a)(18),[2] which makes capital a murder committed by firing a deadly weapon from within a vehicle, is unconstitutional because it allows “disproportional and arbitrary” application of the death penalty. (Appellant’s brief to this Court at p. 121.)
Alabama has not had occasion to address the constitutional claims raised in this case. However, we have addressed the constitutionality of § 13A-5-40(a)(17) — a statute similar to § 13A-5-40(a)(18) and a statute that was also added to the list of capital offenses by Act No. 94-649. Section 13A-5^40(a)(17) makes a capital offense the intentional murder of a person while the person is in a vehicle. These two statutes are similar — the only distinction is the location of the defendant or the victim. In § 13A-5-40(a)(17), the victim is in a vehicle; in § 13A-5-40(a)(18), the defendant is in a vehicle. “The recent in *1008 crease in drive-by shootings, carjackings, and other random acts of violence involving vehicles could have led the legislature to enact [these] statutefs].” Farrior v. State, 728 So.2d 691 (Ala.Crim.App.1998).
In upholding § 13A-5-40(a)(17) against similar constitutional claims we stated:
“The appellant ... argues that § 13A-5-40(a)(17) is unconstitutional because it mandates a cruel and unusual sentence of death or life imprisonment without the possibility of parole. He contends that the legislature placed a ‘disproportionate emphasis on the location of the victim as the sole criteria for the sentence of death or life without parole.’ (Appellant’s Brief at p. 23.) Essentially, the appellant argues that there is no rational basis for distinguishing an intentional killing of a person who is inside a vehicle from an intentional killing of a person who is not inside a vehicle. For the reasons stated above, we adhere to our holding in May [v. State, 710 So.2d 1362 (Ala.Crim.App.1997) ] that the statute is constitutional and properly elevates the murder of a person in a vehicle through the use of a deadly weapon to a capital offense.
“Furthermore, the sentencing procedure for a person convicted of violating § 13A-5-40(a)(17), Ala.Code 1975, is constitutionally sound.
“ ‘ “A capital sentencing scheme must ... provide a ‘ “meaningful basis for distinguishing the few cases in which [the death penalty] is imposed from the many cases in which it is not.” ’ [Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976)], quoting Furman v. Georgia, [408 U.S. 238, 313, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)] (White, J., concurring).
“ ‘ “This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty.”
“‘Godfrey v. Georgia, 446 U.S. 420, 427-428, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398, 406 (1980).’
“[Ex parte] Woodard, 631 So.2d [1065] at 1069 [ (Ala.Crim.App.1993), cert. denied, 662 So.2d 929 (Ala.), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994) ].
“ ‘Although the appellant argues that this statute violates the Eighth Amendment’s ban on cruel and unusual punishment because the punishment is disproportionate to the crime, the United States Supreme Court has indicated that the death penalty is not cruel and unusual in all murder cases. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Moreover, the Court has indicated that the death penalty is a constitutional punishment for intentional murder. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).’
“Hadley v. State, 575 So.2d 145, 152 (Ala.Cr.App.1990). Not every death of a victim in a vehicle will constitute capital murder. Section 13A-5^0(a)(17) requires that, to constitute a capital offense, the murder must be intentional. Therefore, the statute is not inconsistent with the United States Supreme Court’s holding in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). In addition, a conviction under this statute does not automatically result in a mandatory death sentence. Instead, ‘ “[u]pon conviction of a defendant for a capital offense, the trial court [conducts] a separate sentencing hearing to determine whether the defendant shall be sentenced to life imprisonment with *1009 out parole or to death.” ’ Hadley, 575 So.2d at 152, quoting § 13A-5-45(a), Ala.Code 1975.
“ ‘ “[T]he [United States Supreme] Court has imposed two general requirements on the capital sentencing process. First, a state must channel the sentencer’s discretion in order to ‘genuinely narrow the class of persons eligible for the death penalty and ... [thus] reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.’ Second, the State may not limit the sentencer’s consideration of any relevant evidence that might lead the sentencer to decline to impose the death penalty.
“ ‘ “The required narrowing of the class of death-eligible defendants may occur at either the guilt or the sentencing phase of a capital trial. When narrowing is accomplished during the sentencing phase, the sentencer determines whether certain characteristics of the crime, known as aggravating circumstances, distinguish the gravity of the offense so as to justify the imposition of the death penalty.” ’
“Woodard, 631 So.2d at 1070 (citations omitted).
“ ‘Under our current statutory scheme, a “capital offense” is “[a]n offense for which a defendant shall be punished by a sentence of death or life imprisonment ivithout parole according to the provisions of ... [Article [2 of Chapter 5 of Title 13A].” § 13A-5-39(l) (emphasis added [in Woodard ]). The specific forms of conduct that the legislature has declared to be “capital offenses” are set forth in § 13A-5-40 (Supp.1993). Each of these offenses consists of an intentional murder coupled with some other element.’

“Id.

“ ‘[T]he legislature has clearly classified certain crimes as “capital offenses,” § 13A-5-40, and it has set the minimum punishment for such crimes as imprisonment for life without parole, see §§ 13A-5-45(f); 13A-5-46(e)(l). This is no different from the legislature’s classifying other offenses for purposes of punishment and establishing minimum and maximum punishments for each classification. See §§ 13A-5-53; 13A-5-6; 13A-5-7. A greater punishment — death—may be imposed on a defendant convicted of a capital offense, but only if one or more of the aggravating circumstances enumerated in § 13A-5-49 is found to exist and that aggravating circumstance(s) outweighs any mitigating circumstance(s) that may exist.’
“... ‘[T]he defendant does not become death eligible until the State proves an aggravating circumstance in the punishment phase.’
“631 So.2d at 1071 (emphasis in original). Thus, for a defendant to be sentenced to death upon conviction for violating § 13A-5-40(a)(17), the defendant must be guilty of the intentional murder committed through the use of a deadly weapon while the victim is in a vehicle ‘and the sentencer must find the existence of at least one of the aggravating circumstances enumerated in § 13A-5-49, thereby narrowing the class of “death-eligible” defendants.’ Woodard, 631 So.2d at 1070.
“‘“[W]hen, in the opinion of the legislature, a class of victims required special protection and the statutory scheme provides a meaningful method of narrowing the class of defendants who are death *1010 eligible, the statute is not constitutionally infirm.” ’
“Woodard, 631 So.2d at 1072 (citation omitted). Alabama’s capital sentencing scheme delineates a precise procedure to determine whether a defendant convicted under this statute will be sentenced to death or to life imprisonment without the possibility of parole. Furthermore, it narrows the class of ‘death-eligible’ defendants. Accordingly, the procedure for sentencing a person convicted of violating § 13A-5-40(a)(17) withstands the appellant’s challenges.”
Farrior, 728 So.2d at 701-03. See also Merrill v. State, 741 So.2d 1099 (Ala.Crim.App.1997); May v. State, 710 So.2d 1362 (Ala.Crim.App.1997).
Not every shooting from a vehicle that results in the death of a victim is a capital offense. Only those shootings that are intentional can be capital. Moreover, not every intentional killing by firing a deadly weapon from a vehicle will subject the defendant to the death penalty. Only in those situations where one or more of the aggravating circumstances enumerated in § 13A-5-49(l) through (10) are established, will a defendant face a possible death sentence. Here, the aggravating circumstance charged and proven was that the defendant “knowingly created a great risk of death to many persons” by “firing a powerful handgun 3 times towards not only the victim but towards a crowd of 30 to 40 people.” (Trial court’s order sentencing McGriff to death.) See § 13A-5-49(3). Section 13A-5-40(a)(18) does not result in the arbitrary or disproportionate imposition of the death penalty.
II.
McGriff argues that Alabama’s capital sentencing scheme is unconstitutional because, he says, § 13A-5^47(e) fails to state the weight the trial court should assign to the jury’s sentencing recommendation.
We have repeatedly upheld Alabama’s capital sentencing scheme against this same constitutional challenge. In Ferguson v. State, 814 So.2d 925, 955-56 (Ala. Crim.App.2000), affd, 814 So.2d 970 (Ala. 2001), we stated:
“Ferguson contends that § 13A-5-47(e), Ala.Code 1975, which allows the trial court to override the jury’s sentencing recommendation of life imprisonment without parole and sentence a defendant to death, is unconstitutional and that it results in the arbitrary imposition of the death penalty. Specifically, he argues that the statute ‘is constitutionally defective because it does not state what weight the trial court is to give the jury’s recommendation.’ (Ferguson’s brief to this court, p. 65.) Because Ferguson did not raise this claim in the trial court, we review it under the plain-error rule. See Rule 45A, Ala.R.App.P.
“In Burgess v. State, 811 So.2d 557 (AIa.Crim.App.1998), affd in pertinent part, rev’d on other grounds, [Ms. 1980810, January 28, 2000] [ ], we stated the following regarding an identical claim:
“ ‘Burgess’s claims with respect to § 13A-5-47(e) have been addressed and rejected by the United States Supreme Court in Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). The Court in Harris held that the “the Eighth Amendment does not require the State to define the weight the sentencing judge must give to an advisory jury verdict.” 513 U.S. at 512, 115 S.Ct. at 1036. The Court further held:
*1011 “ ‘ “The Constitution permits the trial judge, acting alone, to impose a capital sentence. It is thus not offended when a State further requires the sentencing judge to consider a jury’s recommendation and trusts the judge to give it the proper weight.”
“ ‘513 U.S. at 515, 115 S.Ct. at 1037. The Court in Harris noted that the “ ‘Eighth Amendment is not violated every time a State reaches a conclusion different from a majority of its sisters over how best to administer its criminal laws.’ ” 513 U.S. at 510, 115 S.Ct. at 1034, quoting Spaziano v. Florida, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984).
“ ‘Alabama’s capital sentencing statute “adequately channels the trial court’s discretion so as to prevent arbitrary results.” Bush v. State, 695 So.2d 70, 94 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997)(citing Harris and rejecting claims that Alabama’s statute permits a standardless override).
“ ‘Because Burgess’s claims with respect to § 13A-5-47(e) have previously been addressed and rejected, there is no plain error as to this matter.’
“611 So.2d at 599. See also Jackson v. State, 836 So.2d 915 (Ala.Crim.App.1999); Smith v. State, 756 So.2d 892 (Ala.Crim.App.1998), aff'd, 756 So.2d 957 (Ala.2000); Roberts v. State, 735 So.2d 1244 (Ala.Crim.App.1998), aff'd, 735 So.2d 1270 (Ala.1999); Burgess v. State, 723 So.2d 742 (Ala.Crim.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999); Knotts v. State, 686 So.2d 431 (Ala.Crim.App.1995), aff'd, 686 So.2d 486 (Ala.1996), cert. denied, 520 U.S. 1199, 117 S.Ct. 1559, 137 L.Ed.2d 706 (1997); Bush v. State, 695 So.2d 70 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997); Rieber v. State, 663 So.2d 985 (Ala.Crim.App.1994), aff'd, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995); Carr v. State, 640 So.2d 1064 (Ala.Crim.App.1994); McGahee v. State, 632 So.2d 976 (Ala.Crim.App.), aff'd, 632 So.2d 981 (Ala.1993), cert. denied, 513 U.S. 1189, 115 S.Ct. 1251, 131 L.Ed.2d 132 (1995); Coral v. State, 628 So.2d 988 (Ala.Crim.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994); McMillian v. State, 594 So.2d 1253 (Ala.Crim.App.1991), remanded on other grounds, 594 So.2d 1288 (Ala.1992).”
III.
McGriff argues that numerous instances of prosecutorial misconduct in the penalty phase denied him a fair and impartial sentencing determination.
When reviewing claims of improper prosecutorial misconduct the question we must ask is not whether the prosecutor’s comment was prejudicial, but whether it “so infected the trial with unfairness as to make the resulting conviction a denial of due process.” Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). “ ‘A prosecutor’s statement must be viewed in the context of all of the evidence presented and in the context of the complete closing arguments to the jury.’ ” Taylor v. State, 808 So.2d 1148 (Ala.Crim.App.2000), quoting Roberts v. State, 735 So.2d 1244 (Ala.Crim.App.1997), aff'd, 735 So.2d 1270 (Ala.), cert. denied, 538 U.S. 939, 120 S.Ct. 346, 145 L.Ed.2d 271 (1999). “Moreover, this Court has also held that statements of counsel in argument to the jury must be *1012 viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict.” Bankhead v. State, 585 So.2d 97, 107 (Ala.Crim.App.1989), aff'd in relevant part, 585 So.2d 112 (Ala.1991), rev’d on other grounds, 625 So.2d 1146 (Ala.1993). “The prosecutor has a right to present his impressions from the evidence and may argue every legitimate inference. Henderson v. State, 584 So.2d 841 (Ala.Cr.App.1988), remanded on other grounds, 584 So.2d 862 (Ala.), aff'd on remand, 587 So.2d 1071 (Ala.Cr.App.1991). The prosecutor may ‘examine, collate, sift, and treat the evidence in his own way.’ Watson v. State, 398 So.2d 320, 328 (Ala.Cr.App.1980)[, writ denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981)].” Smith v. State, 727 So.2d 147, 170 (Ala.Crim.App.1998), aff'd, 727 So.2d 173 (Ala.), cert. denied, 528 U.S. 833, 120 S.Ct. 91, 145 L.Ed.2d 77 (1999).
 Many of the alleged instances of improper argument were not objected to at trial.
“ ‘While this failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice.’ Ex parte Kennedy, 472 So.2d at 1111 (emphasis in original). ‘This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to e particularly harmful.’ Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). ‘Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings.’ United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). See also Biddie v. State, 516 So.2d 837, 843 (Ala.Cr.App.1986), reversed on other grounds, 516 So.2d 846 (Ala.1987).”
Kuenzel v. State, 577 So.2d 474, 489 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
A.
McGriff argues that the prosecutor improperly argued that two aggravating circumstances were present in the case when, he says, the evidence and the law tended to establish only one aggravating circumstance.
Initially, we observe that no objection was made to the comment complained of. Therefore, we are limited to reviewing this issue for plain error. See Rule 45A, Ala. R.App.P.
The prosecutor made the following comment during the prosecutor’s opening statements in the penalty phase:
“We have already proved one aggravating circumstance that we need to prove right out of the blocks because he was found guilty of capital murder. That’s already been done. That’s the first aggravating circumstance.”
(R. 1018.)
The State concedes that the prosecutor made this statement and that it is erroneous. The fact that the murder was committed by firing a deadly weapon from a vehicle is not an aggravating circumstance. See § 13A-5^49. The entry of the guilty verdict of capital murder does not indicate that an aggravating cireum- *1013 stance has been submitted and proven to the jury.
The above comment was not made during the prosecutor’s closing argument; it was made during the opening statement in the penalty phase. During closing argument the prosecutor argued that only one aggravating circumstance had been submitted and proven — that the appellant knowingly created a great risk of death to many persons. See § 13A-5-49(3). Also, the trial court instructed the jury on only one aggravating circumstance — § 13A-5-49(3). The trial court gave the following instruction, “This case presents as an aggravating circumstance, which the State has raised as an aggravating circumstance, that the defendant knowingly created a great risk of death to many persons.” (R. 1146.) No other aggravating circumstance was defined for the jury. After examining the record and the instructions given to the jury in the penalty phase we find no plain error. Nor, do we believe that the prosecutor’s comments, made in the opening statement, so infected the proceedings with unfairness that McGriff was denied a fair trial. See Darden v. Wainwright, supra.
B.
McGriff also argues that the prosecutor improperly argued that McGriff should be sentenced to death because he posed a “future danger to society.” Specifically, he argues that the prosecutor, during his closing argument in the penalty phase, referred to an incident in prison where McGriff threatened another inmate and said he had “done killed one m-f-and he would kill again.”
Initially, we observe that at no time did counsel object to the now-challenged comments. Thus, we are limited to a plain-error analysis. See Rule 45A, Ala. R.App.P.
A portion of the challenged closing argument read as follows:
“And then you know, good people, here is the final thing that tells you beyond all doubt in this case, it tells you about Dennis McGriff, tells you about his propensity for violence and the type of person he is, what he’s going to do, what he’s done and what he plans to do in the future. I done killed one ‘MF.’ And I’m not going to say the words, you heard it.
“And I asked Judge Jackson — I apologize. But, jailer, tell us what he said. I done killed one ‘MF’ and I will kill again. And they want you to send him to the penitentiary for life without parole, so he can contribute to the people in the penitentiary.”
(R. 1119.)
During the penalty phase, the State introduced the testimony of Kim Patrick Wilson, a corrections officer with the Houston County Sheriff’s Department, who witnessed an altercation between McGriff and a fellow inmate, Bernard Thomas. Wilson testified that Thomas told McGriff that he was tired of him bragging about killing Michael McCree and that he was going to get him. McGriff replied, “he had killed one m_ f_ and that he wouldn’t mind doing it again, and that he would have his head.” (R. 1039.)
Not only were the prosecutor’s comments legitimate comments based on Wilson’s testimony but the comments concerned McGriffs future dangerousness — a subject of inestimable concern at the penalty phase of a capital trial. “ ‘These comments were proper because they concerned the valid sentencing factor of [Arthur’s] future dangerousness.’ ” Arthur v. State, 575 So.2d 1165 (Ala.Crim.App.1990), cert. denied, 575 So.2d 1191 (Ala.1991), *1014 quoting Tucker v. Kemp, 762 F.2d 1496, 1507 (11th Cir.1985), cert. denied, 478 U.S. 1022, 106 S.Ct. 3340, 92 L.Ed.2d 743 (1986). Evidence indicating McGriffs future dangerousness was relevant and admissible at the penalty phase of the capital trial. Section 13A-5-45(d) states:
“Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama.”
See Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), and Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).
C.
McGriff argues that the prosecutor diminished the role of the jury in the penalty phase by referring to its verdict as a recommendation. He asserts that the prosecutor’s references to the verdict as a recommendation during voir dire and closing argument diminished the jury’s role and resulted in his denial of a fair sentencing determination.
Initially, we observe that no objections were made at any time to any references to the jury’§ verdict being a recommendation. Therefore, we are confined to applying a plain-error standard of review. Rule 45A, Ala.R.App.P.
Most of the prosecutor’s remarks were only brief references to the verdict’s being a recommendation. We have repeatedly held that such references do not amount to error because they are accurate descriptions of Alabama law. See Taylor v. State, 666 So.2d 36 (Ala.Crim.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996).
However, the prosecutor did make one objectionable statement during the penalty-phase closing argument. The prosecutor stated:
“And I want you to remember. Your job is to make a recommendation. Don’t let them put a guilt trip on you in any manner or fashion. You are making a recommendation today. You promised when you raised your hand that you would apply the law. The legislature said in certain circumstances under this Constitution of Alabama, the United States, the death penalty is warranted.”
(R. 1113-14) (emphasis added). While we do not condone this comment, we find no plain error for the reasons set forth in Bryant v. State, [Ms. CR-98-0023, November 19, 1999] — So.2d - (Ala.Crim.App.1999), cert. granted, [Ms. 1990901, March 20, 2000] — So.2d - (Ala.2000). In Bryant, the Court reviewed a claim that a prosecutor’s argument amounted to reversible error when he told the jury not to let the defense put it on a “guilt trip” because the jury does not decide whether or not the defendant gets the death penalty. The Bryant court found no plain error. We likewise find no plain error here. Here, the role of the jury was not minimized or trivialized. The trial court, during its instructions in the penalty phase, stated “[B]ut you should regard the seriousness of this stage of the proceedings and the seriousness of the issues. Keep in mind that a human life is at stake and use your best judgment and the only issue before you, which is the sentence recommendation of either death or life without parole.” (R. 1157-58.)
*1015 D.
McGriff argues that the prosecutor improperly argued facts not in evidence or facts directly refuted by evidence presented at trial. He cites several different instances in support of this contention.
1.
McGriff argues that the prosecutor improperly argued to the jury that he had previously been convicted of stealing a car. The following occurred during the prosecutor’s closing argument:
“His mother said, ‘Well, he was a good child, I taught him right.’ And I’m sure she tried. There is no malice in my heart towards his mother in any manner or fashion. She did all she could.
“But he’s the one who made the choices. He is the one who decided what he did, not her. But I asked her: ‘Ma’am, it’s true he was stealing things when he was younger.’ Well, yes, it was him and some other young men, they stole.’ Was it also true that he stole a car?’ ‘No, he didn’t’ do that.’ Well, ma’am, here it is right here in the report.’ ”
(R. 1115-16.)
The record reflects that McGriff s mother, Mary Green, testified that she had taught McGriff to know right from wrong, that she believed that he could be a positive influence on his fellow inmates, and that she believed that he would contribute to his fellow inmates’ morality. In an effort to impeach her testimony, the prosecutor asked Green about an interview she had had with Dr. Michael D’Errico when her son was being evaluated before trial. When Green said that she never told the doctor that her son had stolen a vehicle the prosecutor confronted her with a report submitted by D’Errico that showed that she had told Dr. D’Errico that her son had gotten involved in the wrong crowd and that he had been arrested for stealing a car.
This evidence was introduced to impeach Green’s testimony. The argument that the prosecutor made was a reference to Green’s being impeached during her testimony. This was a legitimate subject of argument based on what had occurred during Green’s testimony. Smith, supra.
2.
McGriff argues that the prosecutor improperly stated that McGriff was laughing when the jurors were not in the courtroom, evidence, he contends, that was never properly before the jury.
There was no objection to this comment; therefore, we are confined to only a plain-error standard of review. Rule 45A, Ala. R.App.P.
The record reflects that McGriff called Lieutenant Joe Pitts to testify in the penalty phase. Pitts was the court security officer responsible for escorting McGriff to and from the courtroom and the jail. Pitts testified that earlier in the day McGriff had talked to a group of children who were in the courtroom before court convened. Pitts said that McGriff told the children that “they should not get involved as he had.” (R. 1065.) The prosecutor then cross-examined this witness and the following occurred:
“Q [Prosecutor]: Could you tell this jury, while the jury was out, has this Defendant’s demeanor been different in relationship to while he was sitting in there crying? While the jury was out, was he crying?
“A: No, sir. I have not seen it.
“Q: Is his demeanor different talking with people, laughing and carrying on? Is that fair to say?
“A: He has had conversations with people in his family.
*1016 “Q: Have you ever seen him cry one time except during this trial? Yes or no?
“A: Only during the time court was in session.”
(R. 1067.)
During closing argument the prosecutor stated:
“And while you are out, I asked Lieutenant Pitts: ‘Was his demeanor different, his appearance?’ He was laughing, talking, wanting to see people, visit. What do you call that if that’s not somebody who is trying to slick you, fool you and get your sympathy?”
(R. 1110.) The prosecutor’s comments were legitimate comments based on Pitts’s testimony. Smith, supra.
3.
McGriff argues that the prosecutor incorrectly characterized the evidence by arguing that McGriff had shown no remorse.
We agree with the State that the prosecutor’s comment was a legitimate inference that could have been drawn from the evidence. There was testimony that McGriff yelled out of the car after he shot McCree, “I told you I was going to get you.” McGriff also told police officers that he had shot McCree and that he would not lose any sleep over it. McGriff also told a fellow inmate that he had killed one person and he would not mind doing it again. The prosecutor’s comment was more than adequately supported by the testimony presented at trial.
4.
McGriff argues that the prosecutor improperly argued that the McCree and Bernard Thomas, the inmate McGriff had had a fight with while incarcerated in the Houston County jail, were friends, when, he argues, there was no evidence to support this in the record.
We agree with the State that this comment was a legitimate inference that could have been drawn from Officer Kim Patrick Wilson’s testimony that McGriff and Thomas got into a fight after McGriff kept bragging to him that he had killed Michael McCree. It could be argued that Thomas’s actions and his willingness to get into a fight with a person who said he had killed McCree tended to show some degree of familiarity between the victim and Thomas.
Even if this argument was improper, it did not so infect the proceedings with unfairness that McGriff was denied due process. Darden v. Wainwright, supra.
E.
McGriff argues that the prosecutor improperly argued that certain evidence was not mitigation evidence.
First, McGriff argues that the prosecutor improperly interrupted the defense counsel’s opening statement and said that evidence that McGriff had been in the choir at his church was not evidence of mitigation. The following occurred:
“Also, you are going to hear testimony that Dennis attended church. And I’m not going to try to sit up here and tell you he went every week of every month of every year, but he was a churchgoer and he sang in the choir at the church. And he enjoyed that. That was one of the things growing up as a child.
“Mr. Valeska [prosecutor]: Judge, I would object again. Singing in the church in the choir is not mitigating. And this is argumentative wholeheartedly, Your Honor.
“Mr. Brantley [defense counsel]: Judge, I believe that’s part of his morality, his general upbringing.
*1017 “The Court: I will overrule the objection.”
(R. 1033-34.) Defense counsel then proceeded to again note that McGriff was a member of the church choir.
Initially, we observe that there is no adverse ruling from which to appeal. The trial court overruled the prosecutor’s objection and allowed defense counsel to make this argument to the jury. Because there is no adverse ruling, we review this issue for plain error. See Melson v. State, 775 So.2d 857 (Ala.Crim.App.1999), aff'd, 775 So.2d 904 (Ala.2000).
Here, the trial court on numerous occasions in its charge to the jury instructed the jury that it could consider any aspect of McGriffs life or of the crime as mitigation. The jury understood that it was free to consider any evidence presented as evidence of mitigation. There is no error, much less plain error, here. Rule 45A, Ala.R.App.P.
McGriff also argues that it was error for the prosecutor to argue that no evidence of mitigating circumstances had been presented. There was no objection to this comment; therefore, we look for plain error. Rule 45A, Ala.R.App.P.
This argument was made at the end of the prosecutor’s closing arguments in the penalty phase. (R. 1121.) After evaluating the evidence in his closing statement, the prosecutor argued that no evidence had been presented that mitigated the murder. This was the prosecutor’s interpretation of the evidence presented and was a proper subject of argument.
F.
McGriff argues that the prosecutor improperly compared his rights with those of the victim’s family. McGriff challenges the following argument:
“And then, good people, he’s in jail. And he’s doing what? I want you to remember this second one when you consider any mitigating circumstances they say they want to give to you. But they stood right here and they told you, ‘Well, he didn’t have a father,’ but his mother testified that he had a stepfather who raised him and took care of him, provided for him and helped him.
“What about Michael McCree’s child? He won’t have a father any more either to help take care of his young son or his wife.”
(R. 1114-15.)
As this Court stated in McNair v. State, 653 So.2d 320 (Ala.Crim.App.1992), opinion extended after remand, 653 So.2d 343 (Ala.Crim.App.), opinion extended after remand, 653 So.2d 347 (Ala.Crim.App.1993), opinion extended after remand, 653 So.2d 351 (Ala.Crim.App.1994), aff'd, 653 So.2d 353 (Ala.1994), cert. denied, 513 U.S. 1159, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995):
“The prosecutor made numerous references to the victim’s rights and several times implied that her rights were to be weighed against the appellant’s. This was clearly improper. However, we think these references were valued by the jury at their true worth, as having been uttered in the heat of debate and were not expected to become factors in the formation of the verdict. See Duren v. State, 590 So.2d 360, 364 (Ala.Cr.App.1990), affirmed, 590 So.2d 369 (Ala.1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992); Bankhead v. State, 585 So.2d 97, 106 (Ala.Cr.App.1989), affirmed as to instant issue and remanded on other grounds, 585 So.2d 112 (Ala.1991) (on rehearing), affirmed on return to remand, 625 So.2d 1141 (Ala.Cr.App.1992); Harris v. State, 539 So.2d 1117, 1123 (Ala.Cr.App.1988).”
*1018 653 So.2d at 337-38. For the reasons stated in McNair we find no plain error.
G.
Last, McGriff argues that the cumulative effect of the prosecutor’s allegedly improper comments requires that he be granted a new trial. As we stated in Ferguson v. State, 814 So.2d 925, 950 (Ala.Crim.App.2000), aff'd, 814 So.2d 970 (Ala.2001):
“Lastly, Ferguson contends that the cumulative effect of the prosecutor’s alleged misconduct warrants a reversal of his conviction. Because we find that no single instance of the prosecutor’s conduct was improper, any claim that the alleged improper conduct had a cumulative prejudicial effect on his trial is without merit and does not require a reversal. See Stewart v. State, 730 So.2d 1203 (Ala.Crim.App.1996), aff'd, 730 So.2d 1246 (Ala.), cert. denied, 528 U.S. 846, 120 S.Ct. 119, 145 L.Ed.2d 101 (1999); Hunt v. State, 642 So.2d 999 (Ala.Crim.App.1993), aff'd, 642 So.2d 1060 (Ala.1994).”
We have reviewed all of the challenged instances of prosecutorial misconduct and find no reversible error. We are confident, based on the record before us, that none of the comments so infected the trial with unfairness that McGriff was denied due process. Darden v. Wainwright, supra.
rv.
McGriff argues that the trial court’s jury instructions were erroneous for several reasons.
“A cardinal principle of appellate review of jury instructions is that ‘a single instruction to a jury may not be judged in artificial isolation, but must be viewed to the context of the overall charge.’ ” Kennedy v. State, 472 So.2d 1092, 1104 (Ala.Crim.App.1984), aff'd, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). We must interpret the instructions “as a reasonable juror would have interpreted them.” Johnson v. State, 820 So.2d 842, (Ala.Crim.App.2000), cert. granted (No. 1991943, October 11, 2000). “A trial court has broad discretion when formulating its jury instructions.” Williams v. State, 611 So.2d 1119, 1123 (Ala.Crim.App.1992). See also Ingram v. State, 779 So.2d 1225 (Ala.Crim.App.1999), aff'd, 779 So.2d 1283 (Ala.2000), cert. denied, 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001).
A.
McGriff argues that the trial court’s instructions implied that McGriff would get out of prison if he was not sentenced to death. He specifically challenges the following remark made during the trial court’s instructions, “You may consider as a mitigating circumstance any circumstance that tends to justify the penalty of life in prison.” (R. 1151-52.) McGriff argues that this one brief reference to a sentence of life in prison instead of life imprisonment without parole implied that McGriff would be eligible for parole; therefore, he argues, it made the death penalty a more attractive alternative for the jurors.
There was no objection to this alleged erroneous instruction; therefore, we are confined to a plain-error analysis. Rule 45A, Ala.R.App.P.
The trial court’s jury instructions in the penalty phase of the trial were prefaced with the following instruction:
“Now, the law provides that the punishment for the capital offense for which you have convicted the Defendant is either life without parole or death by electrocution.
*1019 “Life imprisonment without parole means life imprisonment without parole. The death penalty means death by electrocution.
“If you recommend life without parole and I follow your recommendation, Alabama law will never allow the Defendant to be paroled.”
(R. 1142.)
The court’s instructions, when viewed as a whole, clearly informed the jury about the possible sentences McGriff faced, either life imprisonment without parole or death. The trial court on seven occasions referred to the sentence as a life-imprisonment-without-parole sentence. There is absolutely no indication that this slip of the tongue misled the jurors or contributed to their verdict. There was no plain error here.
B.
McGriff argues that the trial court erred in not instructing the jury on all of the statutory mitigating circumstances.
Initially, we observe that after the jury instructions were given, defense counsel announced that he was satisfied with the instructions. Because there was no objection to the instructions, we apply a plain-error standard of review. Rule 45A, Ala. R.App.P.
Defense counsel, in its opening statement to the jury in the penalty phase, argued that the jury should recommend a sentence of life imprisonment without parole because McGriff showed remorse, because he had no relationship with his biological father while he was growing up, because he was on his way to the police station when he was arrested, because he was a respectful young man, because he saved his brother’s life, because he went to church, because he was hyperactive, because he could made a positive contribution to the morality of the prison population, and because he had a three-year-old child. None of the arguments made in the penalty phase tended to establish the existence of any statutory mitigating circumstances. In response to the defense arguments the trial court gave the following instructions on mitigating circumstances:
“The Court charges you that you must consider the mitigating circumstances offered by the Defendant. The list of mitigating circumstances offered cannot limit your deliberations since you are free to consider any aspect of the crime or the character of the Defendant as mitigating in your sole discretion.
“The following are offered as examples of mitigating circumstances which you might consider, but it’s not limited to these: Number one, that Mr. McGriff could never develop a father/son relationship with his natural father; number two, that he did not resist arrest; number three, that he was hyperactive as a child and depended on Ritalin or medicine to control his hyperactivity; number four, in prison Mr. McGriff is capable of helping other inmates and contributing to society; number five, Dennis McGriff generally has a pleasant disposition; and number six, any other circumstances arising from the evidence.
“Those mitigating circumstances are raised by the Defendant. And you may consider those and any others that you find from the evidence.
[[Image here]]
“A mitigating circumstance is anything about Mr. McGriff or the crime which in fairness and mercy should be taken into account in deciding punishment, even where there is no excuse or justification for the bare facts of the crime. Therefore, a mitigating circumstance may stem from any of the diverse frailties of humankind.
*1020 “Mitigating circumstances are any facts relating to Mr. McGriff s age, character, education, environment, mentality, life and background, or any aspect of the crime itself which may be considered extenuating or reducing his moral culpability or making him less deserving of the extreme punishment of death.”
(R. 1150-51.) The trial court’s instructions were thorough and accurate, and they were tailored to the evidence presented in this case.
The trial court did not have an obligation to instruct on a statutory mitigating circumstance that was not relied upon or argued during the penalty phase. As we stated in Johnson v. State, 820 So.2d 842, 875 (Ala.Crim.App.2000), cert. granted (No. 1991943, October 11, 2000):
“Johnson did not present any evidence at the penalty phase concerning the statutory mitigating circumstances enumerated in § 13A-5-51....
[[Image here]]
“The trial court’s instructions were consistent with the evidence presented at the penalty phase; they did not constitute plain error. As we stated in Pressley v. State, 770 So.2d 115, 141-42 (Ala.Cr.App.1999):
“ ‘The trial judge had no burden to recognize a statutory mitigating circumstance not presented by the defense, and proffer it to the jury.... There is no requirement that the trial court read the entire list of statutory mitigating circumstances to a jury where there was no evidence offered to support each circumstance. Holladay v. State, 629 So.2d 673, 687 (Ala.Cr.App.1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994). The trial court’s instructions were sufficient. The trial court did not commit plain error by not sua sponte instructing the jury on a statutory mitigating circumstance not offered by Pressley.’
“See also Burgess v. State, 723 So.2d 742 (Ala.Cr.App.1997), aff'd, 723 So.2d 770 (Ala.1998), cert. denied, 526 U.S. 1052, 119 S.Ct. 1360, 143 L.Ed.2d 521 (1999); Rieber v. State, 663 So.2d 985 (Ala.Cr.App.1994), aff'd, 663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995).”
V.
McGriff argues that the trial court erred in failing to find the existence of several mitigating circumstances. Specifically, he argues that the trial court erred in failing to find that McGriff was remorseful, that he was respectful to others, that he had no significant history of prior criminal activity, that he was under the influence of extreme mental or emotional disturbance at the time of the crime, and that he was only 20 years old at the time of the murder. McGriff argues that because the State did not disprove these circumstances the trial court was required to find that they existed.
We have repeatedly held that whether evidence mitigates a capital murder is within the discretion of the trial court. As we stated in Reeves v. State, 807 So.2d 18 (Ala.Crim.App.2000), cert. denied (No. 1000234, June 8, 2001):
“ ‘In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Supreme Court held that a death penalty statute cannot constitutionally preclude consideration of relevant mitigating factors. However, Lockett does not require that all evidence offered as mitigating evidence be found to be mitigating. Lockett provides that a state may not exclude evidence that the defendant claims is mitigating. This does not mean that all evi *1021 dence offered by the defendant as mitigating must be found to be mitigating and considered as such in the sentencing process.’
“Ex parte Hart, 612 So.2d 536, 542 (Ala.1992), cert. denied, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993). ‘ “While Lockett and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority.” ’ Ex parte Slaton, 680 So.2d 909, 924 (Ala.1996), cert. denied, 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997), quoting Bankhead v. State, 585 So.2d 97,108 (Ala.Crim.App.1989), remanded on other grounds, 585 So.2d 112 (Aa.1991), aff'd on return to remand, 625 So.2d 1141 (Aa.Crim.App.1992), rev’d, 625 So.2d 1146 (Ala.1993). ‘Merely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact.’ Harrell v. State, 470 So.2d 1303, 1308 (Aa.Crim.App.1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
“ ‘ “A sentencer in a capital case may not refuse to consider or be ‘precluded from considering’ mitigating factors. Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982)(quoting Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978)). The defendant in a capital case generally must be allowed to introduce any relevant mitigating evidence regarding the defendant’s character or record and any of the circumstances of the offense, and consideration of that evidence is a constitutionally indispensable part of the process of inflicting the penalty of death. California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); Ex parte Henderson, 616 So.2d 348 (Ala.1992); Haney v. State, 603 So.2d 368 (Ala.Cr.App.1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). Athough the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sen-tencer. Carroll v. State, 599 So.2d 1253 (Ala.Cr.App.1992), affld, 627 So.2d 874 (Aa.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). See also Ex parte Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). Moreover, the trial court is not required to specify in its sentencing order each item of proposed nonstatutory mitigating evidence offered that it considered and found not to be mitigating. Morrison v. State, 500 So.2d 36 (Ala.Cr.App.1985), aff'd, 500 So.2d 57 (Ala.1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987).” ’ *1022 State, 779 So.2d 1225 (Ala.Crim.App.1999).”
*1021 “Wilson v. State, 111 So.2d 856, 892 (Ala.Crim.App.1999), quoting Williams v. State, 710 So.2d 1276, 1347 (Ala.Crim.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). The fact that the trial court does not list and make findings in its sentencing order as to each alleged nonstatutory mitigating circumstance offered by a defendant indicates that the trial court found some of the offered evidence not to be mitigating, not that the trial court did not consider this evidence. See, e.g., Ingram v.
*1022 We remanded this case so that the trial court could correct its sentencing order after we noticed several omissions in the original order. The corrected sentencing order filed with this Court reflects that the trial court considered all of the statutory mitigating circumstances and considered, and found, several nonstatuto-ry mitigating circumstances. There was no evidence indicating that McGriff was not allowed to present any mitigating evidence or that the trial court failed to consider any evidence offered in mitigation. The trial court complied with Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
VI.
Last, as required by § 13A-5-53, Ala. Code 1975, we must address the propriety of McGriffs conviction for capital murder and his resulting sentence of death by electrocution. McGriff was indicted for, and convicted of, killing Michael McCree by discharging a deadly weapon from a vehicle. See § 13A-5-40(a)(18).
The record reflects that McGriffs sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. § 13A-5-53(b)(l).
The trial court found as the only aggravating circumstance that McGriff knowingly created a great risk of death to many persons. § 13A-5-49(3). The trial court stated:
“The State has proved beyond a reasonable doubt the existence of one aggravating circumstance which was that the Defendant knowingly created a great risk of death to many persons. The Court finds that the evidence in this case was that the Defendant fired a powerful handgun three times toward not only the victim but toward a crowd of 30 to 40 people any of whom were at risk of being wounded or killed also. The testimony in the case was that at the location on 7th Avenue in Ashford, Alabama, were a large number of people who were visiting and socializing with one another at the time the weapon was discharged.”
The trial court found as a statutory mitigating circumstance that McGriff did not have a “significant history of prior criminal activity.” § 13A-5-51(l). The trial court considered other statutory mitigating circumstances, but found, based on the evidence presented, that they did not exist. The trial court stated:
“The Court does not find that the Defendant was under the influence of extreme mental or emotional disturbance at the time of the commission of the crime although he had been drinking earlier that day. The June 20, 1997, forensic psychological evaluation of Dr. Michael T. D’Errico reflects that the Defendant’s behavior was not affected by psychiatric symptoms at the time of the offense. The Defendant’s statement did not indicate any psychological problems or confusion.
[[Image here]]
“The Court does not find that the Defendant’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. As mentioned above, although the Defendant may have been drinking sometime prior that day it does not appear that such diminished his ability or mental capacity. The Defendant’s account of the crime in his statement taken shortly after the shooting was clear and in detail as to the shooting and the events leading up to it.
“The Court does not find that the Defendant’s age is a mitigating cireum- *1023 stance in that he was almost 21 years of age at the time of the commission of this offense, being born on November 13, 1975, and by the fact that he had been involved in criminal activity prior to this event.”
The trial court stated the following in regards to the nonstatutory mitigating evidence presented:
“The Court finds the existence of additional mitigating circumstances not enumerated in Section 13A-5-52[3] of the Alabama Code. The Defendant’s natural father left [him] and his mother and had little contact with him during the years of his upbringing. However, his stepfather is a person of substantial ability and reasonable means who was present during his childhood. The Defendant was diagnosed at an early age as hyperactive and for awhile took the drug Ritalin. There was no actual evidence that hyperactivity or the taking of Ritalin as a child had any effect on Defendant’s conduct at the time of the shooting.”
We agree with the trial court’s findings. They are more than adequately supported by the record.
Section 13A-5-53(b)(2) states that we must independently weigh the aggravating circumstances and the mitigating circumstances to determine the propriety of McGriff s sentence of death. After an independent weighing we are convinced, as was the trial court, that death is the appropriate sentence for McGriff s conduct.
Section 13A-5-53(b)(3) states that we must address whether McGriff s sentence to death is disproportionate to other sentences in similar capital cases. We held in Part I that based on the decision in Farrior, § 13A-5-40(a)(18) was not arbitrary and did not result in the disproportionate application of the death penalty. As we stated in Dunaway v. State, 746 So.2d 1021 (Ala.Crim.App.1998), aff'd, 746 So.2d 1042 (Ala.1999), cert. denied, 529 U.S. 1089, 120 S.Ct. 1724, 146 L.Ed.2d 645 (2000):
“As required by § 13A-5-53(b)(3), Ala.Code 1975, we must determine whether the appellant’s sentence was disproportionate or excessive when compared to the penalties imposed in similar cases. In Ex parte Woodard, 631 So.2d 1065 (Ala.Cr.App.1993), cert. denied, 662 So.2d 929 (Ala.), cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994), we held that § 13A-5-40(a)(15), Ala.Code 1975, is not unconstitutionally overbroad, vague, or arbitrary. We also held that the statute narrows the class of people who may become ‘death eligible.’ Id. at 1070. Based on our decision in Woodard, we hold that the appellant’s sentence of death for the murder of James Patterson was neither disproportionate nor excessive.”
Cf. Merrill v. State, 741 So.2d 1099 (Ala.Crim.App.1997) (sentence of death vacated for conviction under § 13A-5-40(a)(18) because there had been no aggravating circumstance argued or submitted to the jury).
*1024 Last, we have reviewed the record for any error that may have adversely affected McGriffs substantial rights and have found none. Rule 45A, Ala.R.App.P.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
McMILLAN, PM., and COBB, BASCHAB, and SHAW, JJ., concur.

. Ebra Hayes was convicted of capital murder in McCree’s death and was sentenced to life imprisonment without parole. Her conviction and sentence were affirmed by this Court *973 by an unpublished memorandum. See Hayes v. State (No. CR-97-2115), 796 So.2d 446 (Ala.Crim.App.1999) (table).

. Gabriel Knight pleaded guilty to manslaughter in McCree's death and was sentenced to 15 years in prison. He did not appeal his conviction to this Court.

. There was some discussion in the record as lo whether the prospective juror was the same *981 person who had had this prior conviction. However, the trial court examined the computer printout and was satisfied that this prospective juror was in fact the same person. Also, defense counsel did not dispute this information during the Batson hearing.

. Corp. Flowers testified as a witness for the defense.

. We note that the Code section is misstated in the indictment. The correct Code section is not § 13A-5-40(18) but § 13A-5-40(a)(18). However, " ‘Miscitation of a code section does not void an indictment which otherwise states an offense; and, in the absence of a *993 showing of actual prejudice to the defendant, reference to the erroneous code section will be treated as mere surplusage.’ ” McElroy v. State, 611 So.2d 431, 433-34 (Ala.Crim.App.1992), quoting Ex parte Bush, 431 So.2d 563, 564 (Ala.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). The indictment tracked the language of the statute and was sufficient to charge the offense.

. Although Judge Wise was not a member of this Court when this case was orally argued, she has reviewed the audiotapes and videotapes of the oral argument.

. This provision is a comparatively new addition to the list of capital offenses. It was made a capital offense in 1994 by Act. No. 94 — 649, Ala. Acts 1994. Act No. 94-649 states that this amendment's purpose was
"To amend Section 13A-5-40 of the Code of Alabama 1975, relating to crimes punishable as capital offenses so as to further amplify and specify as capital offenses the crimes of murder committed by or through the use of a deadly weapon fired or otherwise used from outside a dwelling while the victim is in a dwelling, murder committed by or through the use of a deadly weapon while the victim is in a vehicle, and murder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle; and to include a savings provision relating to proceedings pending and rights and liabilities existing, acquired, or incurred prior to and as of the effective date of this act.”

. This is apparently a miscitation of the Code section. Section 13A-5-51 contains the list of the statutory mitigating circumstances and § 13A-5-52 states the following:
“In addition to the mitigating circumstances specified in Section 13A-5-51, mitigating circumstances shall include any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death.”